## L. S. COGSWELL LBR. CO. v. MANAHAN.

No. 18773. Opinion Filed Feb. 19, 1929.

E. M. Connor, for plaintiff in error.

Woodard & Westhafer, for defendant in error.

TEE̱HEE, C. Our reference to the parties in this cause will be according to their trial positions, where they appeared in the reverse order of their appearance here.

For his cause of action, plaintiff, F. B. Manahan, declared on an oral contract whereunder he alleged that defendant, L. S. Cogswell Lumber Company, had agreed to pay him a commission of 2 1/2 per cent. on certain building materials in the value of $20,315.50, which he purchased from defendant for the account of the third party, whereon defendant had paid a part of the commission leaving a balance of $237.77 due which defendant had refused to pay.

Under defendant's answer thereto and plaintiff's reply, the issue framed was whether or not the contract sued on was illegal and void in that it was contrary to public policy for that the alleged contract constituted a breach of trust reposed in plaintiff by his employer, for whose account the materials were purchased.

At the trial before a jury, plaintiff proceeded on the theory that defendant was estopped to raise the issue of the illegality of the contract in that the same was entered into with the knowledge and consent of both the defendant and plaintiff's employer at the time of the making thereof. Verdict went for plaintiff with judgment thereon for the amount claimed to be due.

The first complaint of the judgment to be considered, in the order of sequence, is that the court erred in overruling defendant's demurrer to plaintiff's evidence. The demurrer was based on the proposition that, as it was necessary to prove an illegal and void contract in order to sustain the action, plaintiff for that reason could not recover. This necessitates our notice of the salient points of the evidence. Substantially these were that plaintiff at the time of the alleged contract was an employee as general manager of Jennings & Robards, who were engaged in the construction of a number of cottages. Among other duties it was plaintiff's business to purchase the building materials, hire the labor, and act as a general superintendent in the construction of the cottages. Defendant, as shown from its title, was engaged in the business of a vendor of building materials. Plaintiff submitted to one A. W. Hine, who was the secretary and treasurer of defendant and in charge of the business, an estimate of certain materials to be used in the construction of the cottages, and requested an estimated cost therefor. In the negotiations, plaintiff informed Hine that his estimated cost was about the same as had been furnished by other dealers, one of whom had offered plaintiff a discount of 5 per cent. if the materials were purchased from that concern. This rate Hine could not give, but offered to give plaintiff direct 2½ per cent. commission if he would purchase the materials from defendant, which was agreed to. Thereupon plaintiff called this to the attention of his employer, Jennings & Robards, who came to defendant's office and went over the estimate as prepared, and upon being requested for a 2½ per cent. discount Hine informed them that this could not be done, as he had agreed to give plaintiff, their employee, a 2½ per cent. commission, to which both partners of the firm of Jennings & Robards agreed and consented. Hine also testified that this arrangement was brought to the attention of L. S. Cogswell, the president of the corporation defendant, who approved the same. The contract was entered into in the fall of 1924, not long after Hine was employed by defendant. Hine continued in defendant's employment until February, 1926. There were payments on the commission contract as payments were made on the account by plaintiff's employer.

Thus, from the evidence demurred to, it is clear that the commission agreement was entered into with the knowledge and consent of both the seller and the purchaser. Notwithstanding these circumstances, defendant contends that the contract was illegal and void on the high ground that the same was contrary to public policy. This is tantamount to the proposition that a contract in which there inheres the element of invalidity is incapable of ratification. O'Connor v. Johnson, 107 Okla. 5, 229 Pac. 146; McLain v. Oklahoma Cotton Growers' Association, 125 Okla. 264, 258 Pac. 269. The proposition thus is resolved into the question of whether or not the contract in the cause at bar was incapable of

ratification. Of this class of contracts, in Harriman on Contracts (2nd Ed.) 115, section 210, it is said:

"Another class of contracts illegal by reason of infringing the rights of others is found in those cases where agreements are made tending to cause a breach of duty by an agent, trustee, or other fiduciary. It has been said that such agreements are against public policy, it being public policy to secure fidelity in the discharge of their duties by such fiduciaries; but it seems more accurate to say that such agreements tending to cause unfaithful conduct by fiduciaries are illegal because they are, in effect, agreements to wrong the persons whose interests the fiduciaries have in charge." See, also, 13 C. J. 415, section 348, and 6 R. C. L. 719, section 126, where the subject-matter is similarly treated.

In Elkins v. McCaskill, 174 Ill. App. 563, the same theory of such contracts finds judicial confirmation in practically the same language, to wit:

"Any agreement the tendency of which is to cause a breach of trust or duty on the part of one who stands in a fiduciary or confidential relation, is illegal and void (9 Cyc. 470) not necessarily because it is against public policy, but because it is, in effect, an agreement to wrong or defraud the person whose interest the fiduciary has in charge, 9 Cyc. 474."

We have examined a number of the cases cited in the excellent treatises of the subject, supra, and find that, where it is expressly held that such contracts are illegal and void as being contrary to public policy, the reason of invalidity was that they were entered into without the knowledge and consent of the parties whose interests were injuriously affected in the execution thereof. This court, in W. R. Pickering Lumber Co. v. Sherritt, 105 Okla. 52. 233 Pac. 179, a somewhat similar case, followed the general expression of the rule, as it was there held:

"A contract made by an agent or broker whereby he. without the knowledge or consent of the purchaser for whom he is acting. receives a secret commission from the party dealing with the principal or in any manner acquires an individual interest in the subject-matter of the agency or employment, is contrary to public policy and void"

In Hunter Realty Co. v. Spencer, 21 Okla. 155, 95 Pac. 757, a case relied on by defendant, it is held:

"Where an agent acts for both parties in making a contract requiring the exercise of discretion, the contract is contrary to public policy, and voidable in equity upon the application of either party."

In the discussion of the point, the court quoted with approval from Mechem on Agency, section 66, to wit:

"An agent owes to his principal a loyal adherence to his interests, and it would be fraud upon the principal, and would contravene the public policy, to permit an agent, without the full knowledge and consent of his principal, to enter into a relation involving such a duty, when his allegiance had already been pledged to one having adverse interests. ***"

It is thus to be observed that while this court has characterized this class of contracts as illegal and void for that they were contrary to public policy, nevertheless, the principle to be applied thereto is that they are voidable and without judicial recognition where they are entered into without the knowledge and consent of the party whose interests would thereby be injuriously affected, and being voidable, ratification thereof by such party removes the element of invalidity. Application of this principle in this jurisdiction is not without precedent. Self v. Gilbert, 105 Okla. 140, 231 Pac. 870. As the contract sued on, as shown by the evidence demurred to, was entered into with the knowledge and consent of plaintiff's employer. and the same not being void in its inception though it was corruptive in its tendency, it must follow that the employer's approval foreclosed defendant's objections thereagainst. In arriving at this conclusion, we may properly observe that we but follow what appears to have been recognized as a general rule, based doubtless on the principle that courts will not relieve parties, upon whom no restrictions are imposed in the particular case, from a contract voluntarily entered into by them which bears the seal of approval by the party whose interests may be thereby injuriously affected. and where the element of invalidity does not inhere in the contract itself. It is, of course. not open to controversy that if the contract were, in fact, void in its inception, ratification thereof would not have removed therefrom the element of invalidity, and ratification would not have precluded challenge thereof. O'Connor v. Johnson, and McLain v. Oklahoma Cotton Growers' Association, supra. The court therefore did not err in overruling defendant's demurrer to plaintiff's evidence.

It is next urged that the court's refusal

of admission as evidence of a letter written by defendant to one of plaintiff's employers in relation to his knowledge of the commission agreement, whereon the answer of the employer was endorsed, was error. Defendant's entire treatment of this proposition is contained in the one sentence, to wit:

"This was competent testimony and should have been admitted"

And being without supporting authorities, this is tantamount to a waiver thereof, and thus insufficient to require our consideration. Allison v. Bryan, 26 Okla. 520, 109 Pac. 934; Cavanagh v. Johannessen, 57 Okla. 149, 156 Pac. 289.

It is finally contended that the court erred in overruling defendant's motion for a new trial based on the ground of newly discovered evidence. The gist of this proposition is that two days after the trial defendant learned of the whereabouts of Jennings, the other partner of plaintiff's employer. If it be assumed that the affidavit attached to the motion contains grounds ordinarily considered to be sufficient, the record shows that defendant knew of the whereabouts of the partner, Robards, a week before the trial, to whom the letter rejected by the court was addressed; that it knew what Robards would have testified to in relation to the commission agreement several days before the trial. The affidavit shows that Jennings would likewise so testify. In Mann v. Wilson, 117 Okla. 239, 246 Pac. 464, the controlling rule is stated as follows:

"A rule of wide recognition regarding the granting of new trials on the ground of 'newly discovered evidence' exacts that the evidence fulfill the following requirements: (1) It must be such as will probably change the result if a new trial be granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issues; (5) it must not be merely cumulative to the former evidence, and (6) it must not be merely to impeach or contradict the former evidence."

As the asserted newly discovered evidence would be merely cumulative to evidence, the essentials of which defendant already knew prior to the trial, in the securing of which he failed to exercise diligence by requesting a continuance of the cause to permit his obtaining a deposition of the other partner, Robards, it could hardly be successfully contended that discovery of such new evidence was had subsequent to the trial. Because of these circumstances,

we are not prepared to say that the court erred in overruling defendant's motion for a new trial based on that ground. Wysong. v. Amarillo National Life Ins. Co., 87 Okla. 125, 209 Pac. 332.

For the foregoing reasons, therefore, the judgment of the common pleas court of Tulsa county should be, and the same is hereby affirmed.

REID, HERR, JEFFREY, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (2) 2 R. C. L. p. 178; 1 R. C. L. Supp. p. 427; 4 R. C. L. Supp. p. 88; 5 R. C. L. Supp. p. 78; 6 R. C. L. Supp. p. 71; 7 R. C. L. Supp. p. 36. See "Appeal and Error," 3 C. J. p. §1588, p. 1412. n. 54; §1591, p. 1428, n. 53. "Contracts," 13 C. J. §348, p. 417, n. 57. 'New Trial," 46 C. J. §222, p. 249, n. 30.