## RIDDLE v. ELLIS.

No. 18480. Opinion Filed Oct. 8, 1929.

G. Earl Shaffer, for plaintiff in error.

Goode & Dierker, for defendant in error.

DIFFENDAFFER, C. Defendant in error, hereinafter referred to as plaintiff, commenced this action, against plaintiff in error, hereinafter referred to as defendant, to quiet the title of plaintiff in and to the E.½ of the N. E.¼ of section 11, twp. 10 N., range 3 E., and for cancellation of a certain oil and gas lease and an assignment thereof to defendant, covering the land. He alleged that he is the owner of the legal and equitable title to the land, and that he and those through whom he claims had been in the open, exclusive, and notorious possession thereof for more than 15 years next preceding the commencement of this action; that defendant claimed to have an oil and gas lease upon the land by virtue of a purported assignment from one William L. Bowie, which lease purports to have been executed by one Mah-ke-se-ah and A. W. Leech, Superintendent in charge of the Shawnee Indian Agency; that the lease is of record in Pottowatomie county, having been placed of record July 11, 1925; that the assignment dated August 3, 1925, is also of record; that the said William L. Bowie never acquired any right, title, or interest in and to the oil and gas rights, in that said A. W. Leech did not have any right or authority in any capacity to execute the oil and gas lease, and that if Mah-ke-se-ah executed the same, which is denied, he only

had an undivided one-third interest in the land and could not convey an oil and gas lease for said interest without being joined by his cotenants. It is further alleged that defendant had failed and refused to comply with the terms of the lease by paying the rentals provided for therein; that plaintiff had been the owner of said land since September 22, 1925, and had been prevented from enjoying the full use thereof by reason of the cloud cast upon his title by the lease and assignment being of record.

After unsuccessful demurrer, defendant answered by general denial, admitting that plaintiff had acquired title to the premises on September 22, 1925, by deed from Mahke-se-ah, Mah-ta-pene and Pum-y-tum-moke, as the heirs of Pah-ko-tah, deceased. Defendant further alleged that Pah-ko-tah, being the owner of the land, died prior to November 3, 1924, leaving as his sole heirs at law the three Indians named as grantors in plaintiff's deed; that on November 3, 1924, said heirs made, executed, and delivered the oil and gas lease in question in favor of William L. Bowie, a copy thereof being attached to the answer and made a part thereof; that said lease was approved by the Secretary af the Interior on November 24, 1924, and that upon such approval, the lease became a valid and subsisting contract between the parties; that said lease was sigend by Mah-ke-se-ah in the presence of two witnesses, naming them, and that A. W. Leech, acting for Mah-ta-pene and Pum-y-tum-moke, executed the lease as their agent and attorney-in-fact; that this was on November 3, 1924; that thereafter, on February 20, 1925, Mah-ta-pene executed the lease, with full knowledge that Leech, acting as agent and attorney in fact for her, had executed the same, thereby ratifying the acts of Leech in executing the lease, and at the same time accepted her share of the bonus and advance rentals with full knowledge of the facts; that, in January or February, 1925, Pum-y-tum-moke, with full knowledge of the acts of A. W. Leech, ratified the acts of said Leech, and adopted said lease by accepting the benefits created by its terms and receiving an undivided one-third of the bonus money and advance rentals paid thereunder; that, thereafter, Bowie assigned the lease to defendant, which assignment was in writing and placed of record in Pottawatomie county, February 15, 1926; that prior to the date of the assignment, the lease was placed of record in said county on July 11, 1925; that said lease was of record on September 22, 1925, when plaintiff acquired his deed, and that plaintiff had full knowl-

edge thereof, and had he made any inquiry of his grantors, he would have been advised of all the facts concerning the execution and ratification of the lease as alleged in the answer. Defendant further denied failure to pay rentals, and affirmatively alleged that, on February 10, 1926, and without any knowledge that plaintiff had acquired any interest in the land, he paid to the Superintendent of the Shawnee Indian Agency the full amount of the advance royalty and rentals provided for in the lease so as to continue the lease in full force from one year from November 24, 1925, and thereafter, upon receiving notice of plaintiff's interest and without demand therefor, he tendered plaintiff the sum of $92, being the full amount of the advance royalty and rentals, which was by the plaintiff refused.

By cross-petition, he adopted all the allegations of his answer, and by appropriate allegations asserted the validity of his oil and gas lease as superior to the claims of plaintiff, and asked that it be so adjudged. A copy of the assignment and of plaintiff's deed were attached to the answer and made a part thereof.

Plaintiff replied by general denial, except as to the admission in the answer of certain allegations in plaintiff's petition.

The cause was tried to the court, resulting in a finding in favor of plaintiff and against defendant, to the effect that defendant acquired no rights under the lease and assignment, and a judgment canceling same of record. From this judgment, defendant appeals.

It is apparent that this litigation, to some extent, grew out of the fact that the land involved was considered and treated by the parties interested, at the time the oil and gas lease was given, as restricted Indian land, and subject to the jurisdiction and control of the Secretary of the Interior, in so far as the granting of oil and gas privileges was concerned. The lease in question is on a departmental form, and was clearly intended as a departmental lease. But it appears that Pah-ke-tah, to whom the land was originally allotted, was a Kickapoo Indian, nonresident, being a resident of the Republic of Mexico. The land was allotted under the general allotment Act of 1887, relating to Indians, other than the Five Civilized Tribes, which provided that the lands were to be held in trust by the United States for a period of 25 years and for such longer period as the restrictions might be extended by the President. But by the Act of Congress of June 21, 1906, it was provided that all restrictions, as to sale

and incumbrance of all lands, inherited or otherwise, of all adult Kickapoo Indians, then or thereafter nonresidents of the United States, who had been allotted land in Oklahoma or Indian Territory, were removed, and it was further provided that any such nonresident Indian allottee might lease his allotment without restriction for a period not to exceed five years. In 1924, when the oil and gas lease was given Mah-ke-se-ah, Pum-y-tum-moke and Mah-ta-pene, the heirs at law of Pah-ko-tah were all adult nonresident Kickapoo Indians. So that upon the death of Pah-ko-tah, the land in question descended to his said heirs free from any restrictions, with full power to sell and convey. Such was the construction of the act in Johnson v. United States, 283 Fed. 954, decided in 1922. Notwithstanding this construction, the Department seems to have continued to treat such lands as restricted, and under these circumstances the lease in question seems to have been made. On September 22, 1925, when plaintiff obtained his deed from the three heirs of Pah-ko-tah, he obtained the absolute title thereto in fee simple, free from any lease, unless the oil and gas lease in question, which was then of record in Pottawatomie county, was valid.

The first assignment is: That the court erred in overruling defendant's demurrer to plaintiff's petition. Inasmuch as this question was not presented in the motion for new trial and is not urged in defendant's brief, the same will be treated as abandoned.

Defendant does not in his briefs discuss separately the remaining assignments of error, but presents them under what he terms six points. Under these six points, he so intermingles the assignments of error as to make it somewhat difficult to consider them separately.

The second assignment is: That the court erred in refusing to sustain defendant's demurrer to plaintiff's evidence.

Plaintiff's evidence consisted of the trust patent, dated October 6, 1894, from the United States to Pah-ko-tah; patent in fee simple from the United States to Pum-y-tum-moke, Mah-ta-pene and Mah-ke-se-ah, heirs of Pah-ko-tah, a Mexican Kickapoo Indian; warranty deed from these heirs to plaintiff; the oil and gas lease in question, the assignment thereof to defendant, and a journal entry of judgment entered in the superior court of Pottawatomie county, Okla., November 25, 1925, in an action wherein Joe S. Ellis was plaintiff and Pum-y-tum-moke, Mah-ke-se-ah, and Mah-ta-pene, Mexican Kickapoo allottees, were defendants, which appears to be an action by Ellis against the three Indians named to quiet titles to the land, wherein a finding appears to have been made that the defendants therein were Mexican Kickapoo Indian allottees, nonresidents of the United States, the sole heirs at law of Pah-ko-tah, deceased, a Mexican Indian allottee, who was at the time of his death a nonresident of the United States, and such a nonresident continuously from prior to 1906, to the date of his death, July, 1913; that he was the husband of Pum-y-tum-moke, and the father of the other two defendants. Judgment was entered correcting certain alleged errors in the names of the defendants, as they appeared in the warranty deed to Ellis, adjudging their correct names to be Pum-y-tum-moke, Mah-ta-pene and Mah-ke-se-ah and quieting the title of Ellis in and to the lands herein in controversy as against the defendants therein named.

Defendant in his brief under point 1, which appears to be intended to cover the second assignment of error, says:

"The defendant did not claim at the trial and does not now claim that the lands involved in this controversy were restricted Indian lands, or that the Secretary of the Interior had any jurisdiction or supervision over the lands described in the lease, and suggests that such question is immaterial. The oil and gas lease, executed by the parties, prescribed that the same should become effective only upon the approval of the Secretary of the Interior. Defendant contends that when such lease was so approved, that the same became a contract as between the parties, in the same manner as any other contract."

He says further that plaintiff assailed the validity of the lease, because it was written upon the form prescribed by the Secretary of the Interior for leasing of restricted Indian lands. It is true that plaintiff assails the validity of the lease partly upon the grounds of the form of the lease, and asserts that by reason of certain conditions therein it is void, because of impossibility, under the circumstances, to comply with these conditions. But it will also be noted that he asserts in his petition that Bowie never acquired any rights under the lease for the reason that Leech never had any power, right, or authority, as Superintendent, or in any capacity, to execute the lease.

An examination of the lease discloses that it was never signed by Pum-y-tum-moke in any way, other than by A. W. Leech, Superintendent, and attorney in fact for Pum-

y-tum-moke. The signatures as they appear upon the lease are as follows:

"Mah-ke-se-ah        [Seal.]
  "A. W. Leech
'Mah-ta-pene his [thumb mark]
"A. W. Leech, Supt. and Attorney
    in Fact. for Pah-tah-pene &
    Pum-y-tum-moke, non-resident.

"Two witnesses to execution by lessor:
  "T. B. Alford, P. O. Shawnee, Oklahoma.
  "J. E. Snake, P. O. Shawnee, Oklahoma.
  "William L. Bowie [Seal.]

"Two witnesses by execution by lessee:
  "Wm. Z. Bowie, P. O. Tulsa, Oklahoma.
  "C. G. James, P. O. Tulsa, Oklahoma."

As to Mah-ta-pene, it does not appear by whom his name was signed to the lease, nor that it was in the presence of two witnesses as required by section 5277, C. O. S. 1921. It does not appear when the purported thumb mark was placed after his name, except inferentially from a purported acknowledgment by him dated February 2, 1925, appearing to have been taken before F. J. Rowell, a notary public of Conchise county, Ariz. In any event, the lease was never signed by Pum-y-tum-moke, and as to her interest in the land, it was absolutely void, unless A. W. Leech did have the proper authority, under the fifth subdivision of section 5034, C. O. S. 1921, to execute the lease for her as her attorney in fact.

No such authority was shown at the time the demurrer to plaintiff's evidence was interposed, and as to this one-third interest in the land at least, the demurrer was properly overruled, unless the fact that the lease in this condition being of record was constructive notice to plaintiff and such as to require him to inquire of his grantors as to the facts concerning the lease.

Section 5266, C. O. S. 1921, provides:

"No deed, mortgage, or other instrument affecting the real estate, shall be received for record or recorded unless executed and acknowledged in substantial compliance with this chapter; and the recording of any such instrument not so executed and acknowledged shall not be effective for any purpose."

Under this section, the lease, as to the interest of Pum-y-tum-moke, not being signed by her, and not being acknowledged in the manner provided by law, the recording thereof was not effective for any purpose. If it was not effective for any purpose, it certainly could not be constructive notice to plaintiff. This is probably also true as to the interest of Mah-ta-pene, since neither his purported signature thereto nor his purported acknowledgment was in compliance with the statute relative to the execution and acknowledgment of instruments affecting real estate. The demurrer to plaintiff's evidence was, therefore, properly overruled.

The third assignment is: That the court erred in refusing to admit competent and material evidence offered by defendant. Since this assignment is not separately presented in the brief, it might properly be treated as abandoned. However, we have carefully examined the record and conclude that there was no error therein.

There are many reasons for holding that the lease was ineffective as to the interest of Pum-y-tum-moke and Mah-ta-pene. But defendant, in his reply brief, practically abandons all claims as to the validity of the lease as to the interests of these two Indians, except upon the theory of ratification. He says:

"It is true that plaintiff in error did offer in evidence two powers of attorney executed by Pumytomoke and Matapene in favor of one J. A. Buntin (C.-M. pp. 53, 54, 55, 56, 57), but not on the theory that these instruments gave A. W. Leech authority as attorney in fact to execute the oil and gas lease involved in this action, but only to show that Pumytomoke and Matapene, as Mexican Kickapoo Indians, did know of the fact that they had an interest in some land in Oklahoma, and did authorize J. A. Buntin to exercise some authority over it, and that A. W. Leech assumed the authority to act as attorney in fact for such Indians in the execution of the lease. This for the purpose of following up with testimony that Matapene and Pumytomoke had knowledge of the execution of this particular oil and gas mining lease by A. W. Leech, and that they thereafter ratified the act of A. W. Leech, which, although it may have been without authority, became a valid instrument between the parties when so ratified."

We will therefore not consider the defects in the power of attorney.

It is upon the question of ratification that defendant asserts that the court erred in refusing to admit certain evidence offered by him. He also contends that the oil and gas lease is, and was, valid, as to the interests of the two mentioned, for the reason that, though the lease was not signed by them nor by any person authorized to sign same for them, it was thereafter ratified by them.

We will first consider the evidence as to its sufficiency to show ratification. The evidence, and all the evidence relied upon to prove ratification, are these two powers of attorney and that of the witness J. E. Snake, who was and had been for 20 years one of

the clerks in the Shawnee Indian Agency. Upon the point in question, he testified, in substance: That he knew personally, or otherwise, Mah-ta-pene and Pum-y-tum-moke; that he had seen them since the execution of the lease in favor of W. L. Bowie; that at that time he paid them some money; that they were then in the First National Bank at Douglas, Ariz.; that he knew of his own knowledge of the execution of an oil and gas lease by A. W. Leech, Superintendent and attorney in fact for Mah-ta-pene and Pum-y-tum-moke, covering the. Pah-ko-tah lands; that he had told Mah-ta-pene and Pum-y-tum-moke about this oil and gas lease covering the land involved in this suit; that when he paid them the money, it was quite a bit in one check, all mixed up, agricultural lease money and oil and gas money, and he told them that included the oil and gas lease money.

We think this evidence is insufficient to establish a ratification of the lease for two reasons:

(1) It falls far short of showing that the two Indians took and received the money as their part of the advance royalty and rentals with full knowledge of all the facts relative to the transactions.

(2) There is nothing to show when the transaction took place, except that it was after the date of the lease.

The definition of the word "ratification," as used in the law of principal and agent, is stated in 31 Cyc. p. 1254, as follows:

" 'Ratification,' as used in the law of principal and agent, may be defined as the adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another, who, at the time, assumed to act as his agent in doing the act or making the contract without authority to do so."

In 31 Cyc. 1253, the rule with reference to the necessity of knowledge of the facts is stated as follows:

"As a general rule, in order that a ratification of an unauthorized act or transaction of an agent may be valid and binding, it is essential that the principal have full knowledge, at the time of the ratification, of all material facts relative to the unauthorized transaction."

The text is supported by citations from many states, and there appears to be no contrary holding.

In the same volume, p. 1647, the rule with reference to the burden of proof to sustain ratification is stated as follows:

"A party relying on a ratification of the unauthorized act of an agent has the burden of proving it. To meet the burden it is necessary to show that the ratification was made under such circumstances as to be binding on the principal, especially to see to it that all material facts were made known to him, or, as is sometimes stated, to see to it that there was an adoption of the act by the principal with full knowledge of what had been done in his name and on his behalf; and it does not suffice to show that the principal omitted to make inquiries, and that the facts might have been learned by diligence on his part, if it appears that he misapprehended or was mistaken as to material facts."

These rules apply to transactions where one assumes to act as agent for another without any authority whatever, as well as to transactions of agents in excess of authority or without authority to do the particular act.

There were many facts connected with the transaction which this evidence fails to show were known to the Indians when they accepted the money.

As to who may ratify and when it must be done, the rule is stated, 31 Cyc. p. 1250, as follows:

"As a general rule, any person may ratify an unauthorized act of another on his behalf if he could have given previous authority to do the act, and if he still has power to do it at the time of the ratification; otherwise not. A principal therefore is incapable of ratifying an act if his own status has so changed that he is no longer capable of doing the act, as where before the attempted ratification he had disposed of the property or interest which was the subject-matter of the agent's unauthorized contract."

It not appearing when the transaction relied upon occurred, whether before or after September 22, 1925, the date when the deed of plaintiff shows the two Indians referred to disposed of their entire interest in the land, the evidence, if it was otherwise sufficient, falls short of showing a ratification at a time when the Indians had authority or right to ratify as against plaintiff's interest. McDonald v. McCoy (Cal.) 53 Pac. 421.

We will next consider the question of exclusion by the trial court of certain evidence offered by defendant.

After the witness Snake had testified as to what he told Pum-y-tum-moke and Mah-ta-pene when he delivered the check to them in payment of money due them for agriculture leases on their lands, together with oil and gas lease money, the following record was made:

"Mr. Shaffer: The defendant makes this offer: The defendant offers to prove by this witness that after the execution of the oil and gas lease involved in this litigation, and which had been offered in evidence as a part of the plaintiff's testimony as an exhibit, that this witness advised Mah-ta-pene and Pum-y-tum-moke, whose names appear on this lease under the signature of A. W. Leech, as attorney in fact for them, that the oil and gas lease involved in this litigation had been executed covering the lands in which they had the interest, and paid to them the bonus, and advance rentals paid under the terms of this lease into the office of the Shawnee Indian Agency, and that Pum-y-tum-moke and Mah-ta-pene accepted the money. That he advised the same two people that the money paid or part of the money paid was the rentals and bonus money paid for the execution of this lease covering their interest in the land. That this occurred at Douglas, Ariz.

"Mr. Goode: Now, we object to that for the reason the witness has testified as to what he told them, and it would be too indefinite if it had any bearing or weight to bind even the Indians, much less the plaintiff in this suit. The Court: Objection sustained. Mr. Shaffer: Exception."

In this offer, defendant failed to bring himself within the rule above announced that a principal cannot ratify an unauthorized agreement to sell by his agent after the himself has disposed of the subject of such agreement.

Defendant therein also failed to include in the offer proof tending to show, or in any manner showing, that Pum-y-tum-moke and Mah-ta-pene had full knowledge of all the facts when the money was paid to and accepted by them covering their interest in the land under the oil and gas lease. Without such showing, the proof tendered was wholly insufficient to show ratification and the rejection thereof was not error.

The fourth assignment is:

"That the court erred in canceling the lease so far as it affected the interest of Mah-ke-se-ah at the time said lease was executed."

It is contended by plaintiff that this assignment is not covered by the motion for new trial and presents a new theory not presented at the trial, and must be held of no avail in this court. With this contention, we cannot agree. While the question is not raised in the motion for new trial as a separate and distinct ground for new trial, we think it is sufficiently covered by the first and second grounds in the motion for new trial; viz. "That the judgment and decree of the court is not sustained by suf-

ficient evidence"; "that the judgment and decree is contrary to law."

The only grounds upon which plaintiff assailed the lease in his petition, in so far as it affects the interest of Mah-ke-se-ah, was:

"If the said Mah-ke-se-ah executed the lease, which is denied, he had only an undivided one-third interest in and to said lands and could not convey an oil and gas lease for said interest, without being joined in by his cotenants and joint owners."

He further alleged that defendant had failed to comply with the terms of the lease by paying the rentals provided therein.

We consider first the question as to the right or power of one of several cotenants to lease his own interest in land for oil and gas rights, without being joined therein by his cotenants. The lease in question was signed and properly acknowledged by Mah-ke-se-ah.

The law seems to be well settled that an oil and gas lease made by one of two or more tenants in common to a stranger is void as to his cotenants; that is, if such lease purports to convey the whole oil and gas mining rights in the land, it is not binding as to his cotenants. Zeigler v. Brenneman, 237 Ill. 15, 86 N. E. 597.

The second paragraph of the syllabus in that case reads:

"An oil and gas lease made by a tenant in common to a stranger is void as against his cotenants."

In the body of the opinion, the court said (86 N. E. 600):

"The lease is void as against the grantor's cotenants; that is to say, in determining their rights in the property, no consideration is to be given to the existence of that lease. But it does not follow therefrom that it is of no effect as between the lessor and the lessee, even while the premises remain undivided. On the contrary, as between them, it is just as valid as a lease of property owned entirely by the lessor. Freeman on Cotenancy and Partition, sec. 253. The law is that one tenant in common may not prejudice the rights of his cotenants by a conveyance of any specific part, or of any interest, right, or license in any specific part, of the common property, but such a conveyance is valid as against the grantor, at least by way of estoppel."

The third paragraph of the syllabus is as follows:

"An oil and gas lease made by a tenant in common to a stranger, though void as against his cotenants, is valid as between the parties even while the premises remain undivided."

Plaintiff in his brief says he would be very glad to rest this case upon the doctrine announced in the Zeigler v. Brenneman Case. This, we assume, is because of the rule laid down in the fourth paragraph of the syllabus, to the effect that where a tenant in common leased lands held in common to another to drill and operate for oil and gas, and thereafter all the cotenants joined in a like lease to a different person, neither of the lessees could maintain partition to secure the interest granted him. However, we are not here concerned with the right to partition, as that question is not before us. We are to determine only the question whether or not the lease is void as to the one-third interest represented by the interest formerly held in the land by Mah-ke-se-ah.

In Lanyon Zinc Co. v. Freeman (Kan.) 75 Pac. 995, it was, in effect, held that one of two or more cotenants, executing an oil and gas lease purporting to cover the rights of all the cotenants, would be bound by the lease to the extent of his interest in the land, though the lease be void as to the interest of his cotenants.

In Compton v. People's Gas Co., 75 Kan. 572, 89 Pac. 1039, it is held:

"An oil and gas lease upon lands of which a widow owns an undivided one-half and the other half belongs to the children, and a part thereof is occupied by the family as a homestead, is not void because executed by the widow alone. It conveys her individual interest in the oil and gas privileges, subject to the rights of those occupying the premises as a homestead."

In Howard v. Manning, 79 Okla. 165, 192 Pac. 358, it was held:

"Neither of the tenants in common is entitled to the possession of all the land to the exclusion of his cotenants, nor entitled to possession of any particular part of it. As he cannot exclude his cotenants by his own occupation of the land, he cannot, without their consent or ratification, lease either all or any particular part of the land in such a way that his lessee will have the right to the exclusive possession of all the land, or any part thereof."

And:

"A lessee of one tenant in common by a lease in which the other tenants have not joined, is, as to them, a trespasser so far as he occupies any portion of the land; but the lease is not void as against the tenant in common executing it."

By the language used in the two paragraphs of the syllabus quoted above, it might be inferred that the court intended to hold the lessee of one cotenant, in a lease not joined by the other cotenants, a tres-

passer as to the cotenants not joining in the lease. But we think it was only intended as holding such lessee a trespasser in so far as he attempted to hold the land or any part thereof to the exclusion of the cotenants not joining in the lease. It will be noted that the last clause quoted specifically says that such lease is not void as against the tenant in common executing it. If it is not void as to the tenant in common who executed the lease, it would not be void as to one purchasing the land with notice thereof.

In Prairie Oil & Gas Co. v. Allen, 2 Fed. (2nd Ser.) 566, in discussing the case of Howard v. Manning, supra, it is said:

"While it is not entirely clear from the language used, we are fully persuaded the Oklahoma court, in declaring that a lease by a tenant in common was void, and the lessee who entered a trespasser, referred to a lease by one tenant in common of the whole of the common property, and an occupancy by the lessee to the exclusion of the other cotenant."

That is a case involving oil and gas right in lands in Oklahoma, and it was therein held:

"In Oklahoma, tenant in common in oil and gas underlying land may not make valid lease of whole of common property, but may lease his undivided interest therein, and his lessee becomes for time being tenant in common with other owners."

The oil and gas lease in question was not void as to the interest owned by Mah-ke-se-ah, by reason of the failure of the other two owners to join therein, and upon its execution, the lessee therein, Bowie, became a cotenant for the time being with the other owners. When plaintiff acquired his deed from the three heirs of Pah-ko-tah, he took the land subject to the lease as to the one-third interest of Mah-ke-se-ah.

It is contended, however, in the brief of plaintiff, that the lease in question is not a contract because it is based upon conditions that never existed, and because it is not enforceable and is not capable of performance. This contention seems to be an entire departure from the theory of plaintiff at the trial. It is not hinted at in the petition, and no authorities are cited in support thereof in the brief. While the lease appears to have been executed by Mah-ke-se-ah under the mistaken belief that the land was restricted and under the supervision of the Secretary of the Interior, and is upon the form usually used for leasing restricted Indian lands, it contains the usual clause providing for cessation of supervision and control in the event restrictions on alienation

shall be removed from all the land by the trust period expiring and the lessor being given a patent in fee for the land, or by the lessor being granted a patent in fee prior to the expiration of the trust period. Such leases are common, and we know of no reason why the lease here could not have been as fully performed had all the owners joined in its execution, though no restrictions on alienation actually existed, to the same extent and as completely as such leases are enforced after removal of such restrictions where they do in fact exist. The further contention is made that the rentals were not paid according to the terms of the lease. This was an allegation in plaintiff's petition which, if sufficient to avoid the lease, was necessary for plaintiff to prove. He made no such proof, nor was any attempt made by him to prove the same.

We think the evidence of defendant shows that all the rentals were paid to the Superintendent as they fell due and that as soon as notice was given of the sale of the land to plaintiff, defendant tendered the rentals to him, which he refused. This contention is without merit.

The judgment, of the trial court canceling the lease and assignment in so far as it affects the two-thirds undivided interest in the land acquired by plaintiff from Pum-y-tum-moke and Mah-ta-pene, is correct, and to that extent the judgment should be affirmed.

The judgment and order canceling the lease and assignment, in so far as it affects the undivided one-third interest acquired by plaintiff from Mah-ke-se-ah, is clearly against the weight of the evidence, and without any evidence to support same, and the judgment of the trial court to that extent should be reversed, and the same should be remanded, with directions to enter judgment accordingly.

BENNETT, HERR, HALL, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (2) 21 R. C. L. p. 928; 3 R. C. L. Supp. p. 1203; 4 R. C. L. Supp. p. 1439. (3) 21 R. C. L. p. 928; 3 R. C. L. Supp. p. 1204; 4 R. C. L. Supp. p. 1439; 6 R. C. L. Supp. p. 1295. See "Agency," 2 C. J. §77, p. 467, n. 44; §89, p. 473, n. 95; §93, p. 476, n. 18; §675, p. 928 n. 58. "Tenancy in Common," 38 Cyc. p. 105, n. 83.