**Maxine IRBY, Appellee,**

v.

**William Everett LEE, Jr., Individually, d/b/a Lee's Real Estate, Appellant.**

**No. 45936.**

Court of Appeals of Oklahoma, Division No. 1.

May 8, 1973.

Rehearing Denied May 29, 1973.

Released by Supreme Court for Official Publication July 19, 1973.

Bailey, Ash & Romine, Okmulgee, for appellee.

O. E. Richeson, Henryetta, for appellant.

BAILEY, Presiding Judge.

This action for damages was brought by an "owner-seller" of real estate against her real estate agent for breach of fiduciary relationship. From an adverse decision of the trial court defendant has appealed.

On January 15, 1969, William Everett Lee, Jr. d/b/a Lee's Real Estate, secured an exclusive real estate listing from plaintiff, Maxine Green now Irby, for the sale of a tract of land consisting of 160 acres, for a period of three months at a selling price of $200.00 per acre, with a 6% real estate commission.

Thereafter, Lee, hereinafter referred to as defendant, on April 7, 1969 prepared a contract of sale for the sale of the entire tract to Maton L. Thompson and John C. Hamilton at a price of $200.00 per acre. The contract was executed by plaintiff and Thompson but Hamilton refused to sign. Thompson was unable to purchase the entire tract and on or about April 14, 1969, defendant advised plaintiff that Hamilton was not going to buy any portion of the land, and at that time further advised her that he, the defendant, would buy the east 80 acres and Thompson would buy the west 80 acres for the agreed price of $200.00 per acre. Plaintiff apparently agreed to this proposed sale but did express dissatisfaction with the fact that defendant was going to charge her the same commission, 6%, for selling a part of the property to himself as he would have charged for selling to a third party.

Pursuant to this agreement plaintiff on May 17, 1969, after receiving pay for her property, executed deeds dated May 20, 1969 to defendant covering the east 80 acres and to Thompson as to the west 80 acres.

The controversy involved in this lawsuit arose when plaintiff later discovered in September 1969 that defendant had entered into a contract on April 30, 1969 to sell the east 80 acres to Junior and Virginia Green for the sum of $250.00 per acre, or $4,000 more than defendant had paid plaintiff for the property. Defendant executed a deed covering the east 80 acres to the Greens on May 1, 1970.

Plaintiff upon discovering that defendant had sold the east 80 acres to the Greens prior to the time her sale to defendant had been concluded, brought this action against defendant for the sum of $4,000 less 6% real estate commission or a total of $3,760, as lost profits.

After trial to the court sitting without a jury, judgment was rendered for plaintiff against defendant for the sum of $3,760 and defendant then perfected this appeal.

There is no serious disagreement between these litigants as to the general law applicable to real estate brokers and principals.

The law generally applicable to a fiduciary relationship is clearly set out in 12 Am.Jur. Brokers, §§ 84 and 89, wherein the writer states:

"§ 84 Fiduciary duties.

"A broker is a fiduciary and holds a position of trust and confidence. He is re-

quired to exercise fidelity and good faith toward his principal in all matters within the scope of his employment, and to account for all funds or property rightfully belonging to his principal. He cannot put himself in a position antagonistic to his principal's interest, by fraudulent conduct, acting adversely to his client's interest, *or by failing to communicate information he may possess or acquire which is or may be material to his employer's advantage, or otherwise.* Standing in the place of and representing his employer, a broker is bound to discard every feeling of friendship, to know no self-interest, and to act as he judges the interest of his employer would induce the latter to act if he were present." (Emphasis added)

"§ 89 Disclosure of information to Principal; notice to broker as notice to principal.

"The rule requiring a broker to act with the utmost good faith toward his principal places him under a legal obligation to make a full fair, and prompt disclosure to his employer of all facts within his knowledge which are or may be material to the matter in connection with which he is employed, which might affect his principal's rights and interests or influence his action in relation to the subject matter of the employment, or which in any way pertain to the discharge of the agency which the broker has undertaken.

*"Thus, it is the duty of a broker who is employed to sell property at a specified price to inform his principal of the fact that the property has become of enhanced value since the time when it was placed in his hands for sale, or, upon hearing that a more advantageous sale or exchange can be made, the facts concerning which are unknown to the principal, to communicate the same to him before making the sale as expressly authorized.* A neglect to do so renders him liable to his principal for whatever loss the latter may suffer as a conse-

quence thereof . . . . ." (Emphasis added)

This general law just quoted from American Jurisprudence is also the settled law in Oklahoma. The Supreme Court in the early case of Wilcox v. Reynolds, 169 Okl. 153, 36 P.2d 488 (1934) in an action between a real estate agent and his principal, held:

"The law requires perfect good faith on the part of an agent towards his principal, not only in form, but in substance; and the obligation of an agent to his principal demands the strictest integrity, good faith, and most faithful service.

"Where an agent undertakes to sustain dealings with his own principal, it must appear that the agent gave his principal full information concerning his relation to the contract and the material circumstances."

In Widing v. Jensen, 231 Or. 541, 373 P.2d 661 (1962) in an action involving an agent and his principal, the Court held that a broker purchasing property from his principal has the burden of showing that there was a full and complete disclosure and that he did not reap a secret profit.

The real question that was before the trial court and is now before this court on appeal is—did a fiduciary relationship still exist between the parties at the time Lee made a deal with the Greens or had this fiduciary relationship terminated thereby freeing defendant to make an independent sale to a third party at a higher price than he had paid plaintiff?

Defendant contends and urges this court to adopt the contention that his fiduciary relationship with plaintiff had terminated either on April 7, 1969 when Thompson agreed to purchase the land for himself and defendant or on April 15, 1969 when the 90 day real estate listing with defendant expired and therefore the law pertaining to a fiduciary relationship has no application here. We do not agree and find that the trial court properly held for plaintiff.

We cannot agree with appellant that his fiduciary relationship with plaintiff had terminated on either April 7 or April 15, but instead hold that this relationship which required "perfect good faith" and "full disclosure" continued until May 17, 1969 at which time the transaction between plaintiff and defendant was closed and plaintiff received her money for her land.

Defendant admits that he was the agent of plaintiff until on or about April 14, 1969 at which time he contends that he and Thompson entered into a binding agreement to purchase the entire 160 acres of plaintiff. He maintains, however, that on that date the fiduciary relationship terminated, leaving him free to sell the east 80 acres to any person of his choice.

We find fault with defendant's contentions for the reason that he never did enter into a binding contract with plaintiff to purchase any part of the tract. He never executed an agreement to purchase anything from plaintiff nor did he ever become legally bound in any other fashion to purchase the east 80 acres. He was free to buy or not buy as he chose right down to May 17, 1969 when he and Thompson paid plaintiff and received deeds from her and defendant collected his real estate commission for his services in connection with the sales.

We must therefore conclude that defendant retained his position as agent of plaintiff until his labors were completed in closing the transaction between plaintiff and the buyers, Thompson and himself, and that during the time preceding the termination of agency, defendant was still bound to fully disclose to plaintiff any opportunities available to her to sell her land at a more favorable price. Failing to do this we are compelled to the view that defendant breached his fiduciary relationship with plaintiff as her agent by failing to act in good faith and make full disclosure of an impending sale to others at a profit to himself, and he is therefore liable in damages as a result thereof.

As to defendant's further contention that his agency expired by the terms of the written real estate agreement with plaintiff on April 15, 1969 we must disagree for the reason that defendant is placed in the incongruous position of denying agency on the one hand after April 15, 1969 and yet claiming, and in fact receiving, a real estate commission for his services from plaintiff as her agent on May 17, 1969. From these circumstances it would appear that the parties extended the terms of the real estate agreement beyond April 15, 1969 by mutual agreement.

Finding no error the cause is affirmed.

Affirmed.

BOX and ROMANG, JJ., concur.