1999 OK 54

**Bonnie M. KINCAID d/b/a Kincaid and Associates, Appellant,**

v.

**BLACK ANGUS MOTEL, INC., Appellee.**

No. 90,890.

Supreme Court of Oklahoma.

June 1, 1999.

Douglas L. Boyd, Tulsa, Oklahoma, For Appellant.

Lawrence A.G. Johnson, Tulsa, Oklahoma, For Appellee.

HARGRAVE, V.C.J.

¶ 1 Plaintiff broker and Defendant seller ("Seller") entered into a one-year exclusive listing agreement, dated September 25, 1996, for the sale of the Black Angus Motel in Poteau. Aubrey Kincaid, plaintiff's agent and sales associate, executed the agreement

on behalf of plaintiff/appellant (collectively, "Realtor"). By letter dated June 2, 1997 the Seller notified the plaintiff that the motel was no longer for sale and that Seller would not be entering any contracts to sell the motel. Realtor sued for breach of contract, seeking to recover a commission of $37,500, which was 5% of the $750,000 listing price. Seller denied that Realtor was entitled to any commission because of Realtor's failure to perform and because the listing agreement was void because the Realtor's agent acquired an interest in the property he was bound to sell, thereby violating his fiduciary duty to Seller. Realtor claims that Seller knew of and agreed to his acquiring an interest in the property, or that his actions after learning of Realtor's participation constituted waiver.

¶2 The listing agreement gave Kincaid and Associates the exclusive right to sell the Black Angus Motel for one year and provided that in the event an offer was obtained whereby the price, terms and conditions were acceptable to the seller, the realtor was to be paid at the closing of the sale. Realtor Aubrey Kincaid obtained buyer Richard A. Weis, who entered into a real estate purchase contract with Seller on February 26, 1997. On March 1, 1997, Realtor entered into a side agreement with Richard A. Weis to co-purchase the property. The sale was set to close on May 15, 1997, but did not close due to Weis and Realtor's failure to obtain financing. Seller terminated the listing agreement by letter dated June 2, 1997.

¶3 Seller moved for summary judgment, asserting that Realtor's acquiring an interest in the purchase of the motel rendered the contract void as in violation of public policy. Seller stated that Realtor's acquisition of an interest in the motel was without the consent, acquiescence, ratification or knowledge of Seller at the time it entered into the contract to sell the property to Weis. Realtor asserted that the contract was merely voidable and that Seller had expressly agreed to Realtor's acquiring an interest in the motel, or had waived any objection thereto by its actions after learning of Realtor's interest.

¶4 The trial court granted summary judgment to defendant/Seller Black Angus Motel, Inc. and awarded an attorney fee. The trial judge did not make findings of fact in the order, but held that the plaintiff's acquisition of an interest in the subject matter of the listing agreement between the parties gave the Seller the right to terminate the listing agreement. The trial court apparently determined that the contract was void and therefore incapable of being ratified. The trial court denied plaintiff's motion for new trial.

¶5 Realtor argued on appeal that the trial court erred in holding that his participation in the purchase of the property voided the listing agreement. Realtor argued that the contract was voidable and capable of being ratified. The Court of Civil Appeals affirmed the trial court on different grounds, which Realtor asserts were not presented to the trial court. We granted certiorari. We find that the trial court erred in determining as a matter of law that the contract was void and incapable of being ratified. A disputed fact question is presented whether Seller knew of and agreed to Realtor's participation, or whether by his conduct he acquiesced in or ratified the contract.

¶6 The sole issues raised by Realtor on appeal were: 1) whether the trial court erred in granting summary judgment to Seller when the evidence showed a genuine dispute as to whether the Seller expressly consented to plaintiff's participation in the purchase of the property subject to the listing agreement; and 2) whether the trial court erred in granting summary judgment to Seller where there was evidence showing that defendant, by its actions, waived any objection to plaintiff's participation in purchase of the property.

 ¶7 A void contract is one that is illegal or contrary to public policy. If the consideration for a contract is illegal by reason of being contrary to public policy, the contract is void and not susceptible to ratification. *Maryland Casualty Co. v. De Armon*, 179 Okla. 60, 64 P.2d 719 (1937). A contract made in violation of a statute is void and when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover. *Missouri Fidelity & Cas. Co. v. Scott & Scott*, 72 Okla.

59, 178 P. 122, 124 (1918). We said, in *Worley v. Carroll*, 110 Okla. 199, 237 P. 120, 124 (1925):

"One of these rules is that an act declared to be void by statute which is malum in se or against public policy is utterly void and incapable of ratification, but an act or contract so declared void, which is neither wrong in itself nor against public policy, but which has been declared void for the protection or benefit of a certain party, or class of parties, is voidable only and is capable of ratification by the acts or silence of the beneficiary or beneficiaries * * * such an act or contract is valid until voided, not void until validated, and it is subject to ratification and estoppel."

¶ 8 Although agreements tending to cause a breach of trust or duty of a fiduciary have been deemed to be void,[1] we have recognized that such agreements are voidable and that knowledge of the contract and acquiescence in it by the party injuriously affected removes the invalidity. *L.S. Cogswell Lumber Co. v. Manahan*, 135 Okla. 174, 274 P. 871, 872 (1929). In *Cogswell*, a building contractor's employee sought bids from various lumber companies. When the employee informed Cogswell Lumber Company that another company had offered a five percent discount, Cogswell offered to pay the contractor's employee a commission of two and one-half percent. The contractor was informed of the agreement and agreed to it. We said that where the contract was not void in its inception and the evidence showed that the contract was entered into with the knowledge and consent of the plaintiff's employer, the employer's approval foreclosed any objections against it. We explained that although such contracts have been called void, such contracts are in fact voidable:

"It is thus to be observed that, while this court has characterized this class of contracts as illegal and void for that they were contrary to public policy, nevertheless *the principle to be applied thereto is that they are voidable and without judicial recognition where they are entered into without*

the knowledge and consent of the party whose interests would thereby be injuriously affected, and, being voidable, ratification thereof by such party removes the element of invalidity. Application of this principle in this jurisdiction is not without precedent. (citation omitted)." (emphasis added) 274 P. at 872.

¶ 9 The power of the courts to declare a contract void as being in contravention of public policy is a very delicate and undefined power, and should be exercised only in cases free from doubt. *Warren v. Dodrill*, 173 Okla. 634, 49 P.2d 137, 140 (1935). When the petition shows on its face that it is based upon a void contract, the courts will not enforce it. *McLain v. Okla. Cotton Growers Assn.*, 125 Okla. 264, 258 P. 269 (1927). The listing agreement in the case at bar was not void on its face, nor was the contract itself illegal or contrary to public policy when entered into. The actions of Realtor during the course of the contract are the reasons asserted by Seller for rendering the contract "void." The contract in the case at bar was not void, but voidable.

¶ 10 A voidable contract continues in existence until its repudiation or rescission by a party entitled to avoid the obligation. *Great American Insurance Co. v. Strain*, 377 P.2d 583, 587 (Okla.1962). In *Strain*, we explained the distinction between void and voidable contracts:

"... The word "void" admits of more than one meaning. A contract may be void in the sense of being illegal; if so, the obligation, being prohibited at law, is a nullity in its contemplation; hence incapable of affirmance, ratification and enforcement. In some context the word void may be construed as meaning merely voidable; that is, the contract continues in force and effect until its timely repudiation or rescission by an affirmative act of the party entitled to avoid the obligation. It is the latter meaning of the term void that the

1. *W.R. Pickering Lumber Co. v. Sherritt*, 105 Okla. 52, 233 P. 179 (1924) held that a contract made by an agent or broker who, without the knowledge or consent of the purchaser, receives a

secret commission from the principal's agent, or in any manner acquires an individual interest in the subject-matter of the agency or employment, was contrary to public policy and void.

law attaches to a policy clause such as that under consideration."

In *Strain,* a group insurance policy provided that the policy was void if issued to an employee who was not actually at work on the date of issuance. The employee was in the hospital when the policy was issued and, at his death, the insurance company claimed that the contract was void. The court held that the policy was voidable, not void.

¶ 11 Whether a contract has been ratified presents a question of fact. Ratification or adoption has been found in cases where a party: 1) has accepted the benefits of the contract, whether void or voidable 2) with full knowledge of the facts 3) at a time when the accepting party was fully competent and capable of contracting for himself. *Carlisle v. National Oil & Dev. Co.,* 108 Okla. 18, 234 P. 629, 631 (1924). *See also, Burke Aviation Corp. v. Alton Jennings Co.,* 377 P.2d 578, 583 (Okla.1963) *and Bd. Of Education of Bartlesville v. Montgomery,* 177 Okla. 423, 60 P.2d 752, 753 (1936).

¶ 12 An agent may not become interested in the property that he is to sell, without the knowledge or consent of the principal or subsequent ratification by the principal. In *Holmes v. McKey,* 383 P.2d 655, 663 (Okla.1963), we said:

"In accordance with principles of utmost loyalty and good faith, an agent authorized to sell or lease his principal's property must in so doing act solely for his principal's interests; and, since there will exist an inducement to act adversely to his principal's interest if the agent is involved as purchaser or lessee while making the sale or lease, such an agent must, as a general rule, sell or lease only to a third person and must not, *without the full knowledge or consent of his principal, himself become the purchaser or lessee either directly or through the agency of a third person.* Accordingly, without his principal's knowledge and consent, he must not become a partner or otherwise jointly interested in purchasing the property." (emphasis added)

¶ 13 In *Irby v. Lee,* 512 P.2d 253 (Okla. App.1973), *approved for publication by the Supreme Court,* the Seller brought an action for damages against her realtor for breach of the fiduciary relationship. After one of the joint purchasers of a 160–acre tract backed out, the seller's realtor offered to buy 80 acres himself. The seller agreed, but complained about having to pay a commission on the 80 acres purchased by the realtor. Subsequently, the seller learned that during the negotiations for his purchase of the 80–acre tract for $200 per acre, the realtor had entered into a contract with a third-party to sell the same tract for $250 per acre. The seller sued the realtor for breach of his fiduciary duty and recovered damages. The Court of Civil Appeals said:

"The law requires perfect good faith on the part of an agent towards his principal, not only in form, but in substance; and the obligation of an agent to his principal demands the strictest integrity, good faith and most faithful service... Where an agent undertakes to sustain dealings with his own principal, *it must appear that the agent gave his principal full information concerning his relation to the contract and the material circumstances.*" (emphasis added). 512 P.2d at 255.

¶ 14 We have said that a ward's knowledge that part of the monies received by him included proceeds of the sale of his land would be a ratification and affirmance of such sale, and it would make no difference whether the sale proceedings were regular, voidable, or void. *Garfield Oil Co. v. Crews,* 134 Okla. 229, 273 P. 228, 234 (1927).

¶ 15 The crucial fact in dispute is whether Seller knew of and agreed to Realtor's purchase, or whether his conduct after learning of same amounted to ratification. Unless the Seller in the case at bar knew of and agreed to the Realtor's joint purchase of the property, or by his actions ratified the contract, the contract could not be enforced. Seller moved for summary judgment based on the assertion that the contract was void and could not be ratified. Realtor responded by asserting that Seller knew of and agreed to Realtor's participation in the purchase of the motel and that the contract was voidable, rather than void, and was thus capable of being ratified.

¶ 16 Realtor offered an affidavit in opposition to Seller's motion for summary judgment to show Seller's express consent or waiver by its actions. The affidavit of Realtor Aubrey Kincaid stated:

"6. On March 1, 1997, I executed on behalf of Kincaid and Associates, a written agreement to participate with Mr. & Mrs. Weis in the ownership of the motel. *Before executing that agreement I informed Vaughn Barnes of my intentions and was told by him that he had no objection to Kincaid and Associates participating in the ownership of the motel.*" (emphasis added)

"7. *Between March 1, 1997 and May 14, 1997, Vaughn Barnes accompanied me to meetings* with: the attorney who was representing Kincaid and Associates, Mr. & Mrs. Weis, and Black Angus Motel, Inc.; the title insurer and the prospective lender for the purchase. That *at each such meeting, the participation of Kincaid and Associates in the ownership of the motel was discussed in the presence of Vaughn Barnes who voiced no objection.*" (emphasis added)

¶ 17 Seller's motion for summary judgment, supported by the affidavit of its president, Vaughn Barnes, stated that he had no knowledge of Realtor's interest at the time the contract was entered into. An affidavit from Seller's attorney states that during the meeting at which the sales contract was executed, it was not discussed or mentioned in the attorney's presence that the Weis' intended to form a corporation with Aubrey Kincaid to buy the subject property. The attorney's understanding was that the buyers were Richard and Jeanny Weis.

¶ 18 Vaughn Barnes' affidavit further states that Aubrey Kincaid called him about two weeks after the real estate purchase

contract with Richard Weis had been entered into and informed Seller that Weis had "twisted his arm and swindled him into buying the motel with Weis."[2] Barnes's affidavit states that at no time, either expressly or by implication, did he and his wife ever consent to the March 1, 1997 agreement between Aubrey Kincaid and Richard Weis. The affidavit states:

"At the time Aubrey was telling my wife and me that we could not hope to sell the motel for $900,000 and trying to convince us to take a lesser amount, we had no knowledge of any negotiations between Aubrey and Weis for Aubrey to take an interest in the objective of the listing agreement. It is for this reason that we elected to cancel the Listing Agreement, it being our belief the through the acts of Aubrey in dealing with the subject matter of our Listing Agreement created a conflict of interest that made the contract void."

¶ 19 Vaughn Barnes' affidavit states that he did not know of Realtor's interest at the time the real estate purchase contract was entered into, but reflects that he knew of Aubrey Kincaid's participation within two weeks after the real estate purchase contract was entered into. Preparations for closing of the sale continued for two months after that time. The sale failed to close on May 15 because Weis and Kincaid were unable to obtain financing. On May 27, 1997, Seller received a facsimile copy of the side agreement between Weis and Realtor. By letter dated June 2, 1999, Seller terminated the listing agreement with Realtor.

¶ 20 The court should not weigh evidentiary materials on motion for summary judgment; it is not the purpose of summary judgment to substitute trial by affidavit for

---

**2.** Vaughn Barnes' affidavit states that on February 25, 1997, realtor Aubrey Kincaid brought buyer Richard Weis to him with an offer of $800,000. Seller said that he wanted not less than $875,000, and that Aubrey Kincaid replied, "No, we can't do that. Let me go talk to them." Kincaid returned with the same offer of $800,000. Seller agreed to sell if the realtor's commission "went on top of" the purchase price. Realtor Aubrey Kincaid said that he'd never done that before, but "would talk to them." Aubrey Kincaid came back with an offer of $842,000, which included his commission and Seller accepted the contract on February 26, 1997. Seller's affidavit states that about two weeks after this event, Aubrey Kincaid called him, saying that Richard Weis had "twisted his arm and swindled him into buying the motel with Weis." On May 27, 1997, Barnes received a facsimile copy of the joint venture agreement between Richard Weis and Aubrey Kincaid.

trial according to law. *Malson v. Palmer Broadcasting Group*, 1997 OK 42, 936 P.2d 940. We said in *Malson* that summary judgment was especially inappropriate in that negligence action because there were conflicting affidavits on the issue of ordinary care. *Id.* at 942. Acquiescence and waiver are questions of fact. *Harn v. Smith*, 85 Okla. 137, 204 P. 642, 650 (1921). Ratification or adoption of a contract may be implied from the acts and conduct of a person receiving the benefits thereof. *Shipman v. Conrad*, 97 Okla. 216, 223 P. 183 (1924). In *Shipman*, one of the defendants sought to avoid liability for a shipment of lumber used to build the home in which she and her husband resided on the grounds that she was a minor at the time the contract for her benefit was entered into and she never had ratified it. The court determined that ratification can be implied by conduct and that the jury verdict, if based upon reasonable evidence tending to support it, should not be disturbed on appeal. We said that the acts and conduct of the appellant were sufficient to establish adoption of the contract.

¶ 21 Summary judgment can be granted only where there is no dispute as to any material facts and all inferences in the evidence must be taken in favor of the party opposing the motion. In *Hargrave v. Canadian Valley Elec. Co-op., Inc.*, 792 P.2d 50 (Okla.1990), we said:

"Summary judgment is a procedural device used to reach a final judgment where there is no dispute as to any material facts. The trial court may look beyond the pleadings to evidentiary material to determine whether any issue remains for jury determination. The court may consider evidence outside the pleadings such as depositions, admissions, answers to interrogatories and affidavits. All inferences in the evidence must be taken in favor of the party opposing the motion. Summary judgment is improper if under the evidence, reasonable men could reach different conclusions from the facts. The moving party has the burden of showing that there is no substantial controversy as to any material fact. After this showing, the opposing party must demonstrate the existence of a material fact in dispute which

would justify a trial. These burdens of proof may be met by circumstantial evidence." (citations omitted)

We said that for summary judgment purposes, a fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties, quoting *Hadnot v. Shaw*, 826 P.2d 978, 985 (Okla.1992).

¶ 22 It is clear that a factual dispute exists in the case at bar regarding whether Seller knew of and agreed to Realtor's joint purchase of the property at the time the contract was entered into or whether Seller, by his conduct after learning of Realtor's interest, acquiesced in or ratified the contract. Realtor's affidavit states that he informed the Seller of his interest prior to execution of the real estate purchase contract and was told by Seller that he had no objection to such participation. Seller's affidavit states that he did not learn of Realtor's interest until some two weeks later when the Realtor informed him that Weis had "twisted his arm." There is a fact question as to when Seller learned of the Realtor's interest, and whether the Seller expressly agreed to Realtor's participation or whether Seller's conduct after learning of Realtor's interest amounted to ratification of the contract.

¶ 23 The moving party, on motion for summary judgment, has the burden of showing that there was no substantial controversy as to any material fact. After this showing, the opposing party must demonstrate there exists a material fact dispute that would justify a trial. *Indiana National Bank v. State Dept. of Human Services*, 1993 OK 101, 857 P.2d 53. *See also, Hughey v. Grand River Dam Authority*, 1995 OK 56, 897 P.2d 1138, wherein we said that a defendant who moves for summary judgment by interposing an affirmative defense against liability must show that there is no substantial controversy over the applicable facts that are material to that defense and that all inferences which may be reasonably drawn from undisputed facts tendered are in the moving party's favor. Once the moving party has made the required showing, the adverse party must

then assume the burden of demonstrating the existence of a material fact that would justify a trial of that issue. On appeal from summary judgment, review is always limited to the issues shown by the record to have been actually presented at nisi prius and actually tendered before the trial judge. *Hughey, supra.*

¶ 24 In order to recover upon a contract, "the contractor complaining of his contractee's non-performance must first establish his own performance or a valid excuse for his failure to perform." *Miller v. Young,* 197 Okla. 503, 172 P.2d 994, 995 (1946). Thus, the burden of proof is on Realtor to show that he has discharged his duties faithfully. *See, Widing v. Jensen,* 231 Or. 541, 373 P.2d 661 (1962). We said in *Wilcox v. Reynolds,* 169 Okla. 153, 36 P.2d 488, 493 (1934):

"As a general proposition the faithful discharge of his duties is a condition precedent to any recovery on the part of a broker for the services he has rendered his principal. Thus his right to compensation is barred if he violated his duty to disclose to his principal any personal knowledge which he possesses relative to matters which are or may be material to his employer's interests, or if he acts adversely thereto, either for the purpose of aiding another or with the design of securing a secret profit for himself, or otherwise advancing his own welfare at the expense of that of his employer."

¶ 25 On remand, Realtor bears the burden of showing that he fully disclosed to the Seller his interest as a joint-purchaser of the property at the time the real estate purchase contract with Weis was entered into and that the Seller agreed, or that the Seller, when he learned of Realtor's interest in the property, waived any objection by conduct that amounted to a ratification of the contract. The party alleging ratification sustains the burden of establishing the fact and the evidence should be plain and unequivocal. *Boulding v. Slick,* 161 Okla. 189, 17 P.2d 391, 394 (1932). *Riddle v. Ellis,* 139 Okla. 68, 281 P. 286, 290 (1929).

¶ 26 Finding that material facts remain in dispute, we hold that the trial court erred in granting summary judgment to Seller. Ac-

cordingly, the trial court's grant of summary judgment is reversed and the cause is remanded for further proceedings.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; THE TRIAL COURT'S JUDGMENT IS REVERSED AND THE CAUSE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

¶ 27 All Justices Concur.

