THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* GUSTAVUS OWINGS, and MARTHA R. OWINGS, his Wife.

*Railroad —Highway —Traveller —Negligence —Province of Court and Jury.*

If a railroad crosses a common road on the same level, those travelling on either have a legal right to pass over the point of crossing, and to require due care of those travelling on the other to avoid a collision.

The speed of a train at a crossing should not be so great as to render unavailing the warning of its whistle and bell; and this caution is especially applicable when the sound is obstructed by winds and other noises, and when intervening objects prevent those who are approaching the railroad from seeing a coming train. In such cases if an unslackened speed is desirable, watchmen should be stationed at the crossing.

The obligations, rights and duties of railroads and travellers, upon intersecting highways, are mutual and reciprocal, and no greater degree of care is required of one than of the other.

Both parties are charged with the mutual duty of keeping a careful lookout for danger; and the degree of diligence to be exercised on

either side, is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty.

Where there has been an omission of some act of duty; or where there is some act of imprudence which no reasonably careful man would commit; if any accident is caused thereby, the Court as matter of law, declares the party in default as negligent and denies him a recovery. But in ordinary cases the question of negligence must be decided by the jury.

When the question arises upon a state of facts upon which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or other of these conclusions has been drawn by the jury.

The inferences to be drawn from the evidence must be certain and incontrovertible, or they cannot be decided upon by the Court. Negligence cannot be conclusively established by a state of facts upon which fair-minded men may well differ.

Where a person is injured by a passing train in attempting to cross the track of a railroad by a foot-path, a few feet distant from a public crossing, his right of recovery against the railroad company is the same as if he had used the public road; provided the danger from the cars would not have been less at the public road, and his precautions would not have been more availing.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

The first *four exceptions* are taken to the refusal of the Court to exclude testimony offered by the plaintiffs to show the dangerous character of the railroad crossing; and the *fifth exception* was to the refusal of the Court at the conclusion of the plaintiff's testimony, to instruct the jury that the plaintiffs had offered no evidence legally sufficient to entitle them to recover.

*Sixth Exception.*—The plaintiffs prayed the Court to instruct the jury on the pleadings and the evidence in the cause, as follows :

1. If the jury shall believe from all the evidence, that the plaintiff, Martha R. Owings, was injured on the 5th day of April, 1884, at or on the railroad of defendant, by being struck by an engine of defendant, attached to a train of cars passing on the tracks of said railroad, and that such injury was caused by the want of ordinary care and prudence on the part of defendant or its agents and employés in the use and management of said engine and train of cars, and that such want of ordinary care and prudence on the part of defendant or its agents and employés, directly caused the injury complained of, and that the said Martha, by the exercise of ordinary care and prudence on her part, could not have avoided the injury complained of, the plaintiffs are entitled to recover in this action.

2. That the ordinary care and prudence which the said Martha was required to use, as stated in the preceding prayer, were such act and conduct on her part as would be the natural and ordinary course of prudent and discreet persons under similar circumstances—that is to say, such degree of care as should have been reasonably expected from an ordinarily prudent person in her situation.

3. If the jury find for the plaintiffs, they may award such damages as they may think proportioned to the injury sustained by said plaintiff, Martha R. Owings, under the evidence in this case.

The Court (WATTERS, J.) granted the plaintiffs' prayers, and the following prayers of the defendant, which were conceded. All the other prayers of the defendant were rejected, and are omitted, the same not being adverted to by this Court.

4. If the jury find from the evidence, that the accident complained of was caused by the want of ordinary care on the part of the defendant in the running of its cars; and shall also find that the want of ordinary care and prudence on the part of the plaintiff, Mrs. Owings, directly contributed thereto, then the plaintiffs are not entitled to recover.

5. That to entitle the plaintiffs to recover in this action, the jury must find from the evidence that the accident or injury complained of was caused altogether and entirely by the negligence and want of due care by the defendant, or its servants and employés, and that the injured plaintiff, Mrs. Owings, did not directly contribute to the said accident by negligence or by the want of prudence and ordinary care on her part.

6. That the defendant was not required by law to station a flagman at the road-crossing near which the accident complained of is testified to have occurred, and the jury cannot infer negligence on the part of the defendant, because the defendant did not keep a watchman or flagman at or near said crossing, or because said defendant did not have any person at or near the place of said accident to warn persons of danger in attempting to cross the railroad tracks at that place, or to prevent them from attempting to cross at said point.

7. That the railroad tracks and right of way of the defendant, at and about where the accident complained of is shown by the pleadings and evidence to have happened, was the property of the defendant, and if the jury shall find from the evidence that a pathway to either side of the defendant's said tracks had been made by persons travelling the same; and shall further find, that said pathway continued across said tracks, and that persons had used the same as a near approach to the store building and station used by defendant for twenty-five years or more, and with knowledge of and without objection from the defendant or its agents, that such user by persons, however numerous and for however long a time, conferred no right upon the plaintiffs or other persons to use said pathway across said tracks, and imposed upon the defendant and its servants no duty to exercise greater care in the management and running of its trains at such pathway than at other points on or along its road, where there were no established crossings.

8. That under the pleadings and evidence in this case the plaintiffs, and neither of them, had any other or greater right to attempt to cross defendant's railway tracks at a point from thirty-three to forty-eight feet east of the public crossing, referred to in the evidence, than at any other point on defendant's line of road, where there was no established crossing; although the jury may believe from the evidence that the plaintiff, Mrs. Owings, had been in the habit of crossing at that point six years before the accident, and all persons who desired to do so had crossed at or about that point for more than twenty years, with the knowledge of the defendant's agents, and without objection from them.

14. If the jury believe from the evidence that the plaintiff, Martha R. Owings, could have avoided the injury to her complained of, by carefully looking and listening for defendant's east bound train, before attempting to cross from the north track to the south side of the railroad, then the plaintiffs are not entitled to recover in this action, and the verdict of the jury must be for the defendant.

The defendant excepted. Verdict was rendered for the plaintiffs for $7000, and judgment was entered accordingly. The defendant appealed.

The cause was argued before ALVEY, C. J., STONE, ROBINSON, IRVING, and BRYAN, J.

*W. Irvine Cross*, for the appellant.

*Wm. P. Maulsby*, for the appellees.

BRYAN, J., delivered the opinion of the Court.

Mrs. Owings was struck by a train of cars belonging to the Baltimore and Ohio Railroad Company, and was seriously injured. This action was brought by her husband

and herself against the railroad company for the recovery of damages. The points decided by the Court below involved principally the inquiries whether the injuries were caused by the negligence of the agents and servants of the railroad company; and whether there was contributory negligence on the part of Mrs. Owings. The accident occurred near a station on defendant's railroad, named Watersville. The injured person having occasion to visit a store kept at the station, was returning on her way to her own home. The station was on the north side of the track, and her house is on the south side, at a distance of about a quarter of a mile. A public road crosses the railroad track about a hundred and forty feet west of the station, and a path for travellers on foot crosses the railroad track between the station and the public road, at a distance east of the public road, variously stated by the witnesses to be from thirty to forty-eight feet. According to the testimony of Mrs. Owings, when she left the station on her return homeward, a long train of burden cars was passing on the north track and going west, she walked along by the side of the track westwardly towards the path mentioned until she reached a point about six feet east of it, and there she stopped and waited until the train of cars passed her about the length of two cars, and after it had passed, she looked, as well as she could, up said tracks westwardly, and listened to see and hear whether any train was coming down the tracks from the west; she heard no whistle or blast from an engine, and heard no noise of any coming train ; and she then started and reached the pathway for foot travellers, and walked on it to the north track of the railroad ; she stopped on the north track, and looked up the south track, and listened to see and hear whether any engine or train of cars was approaching from a westward direction; she could not see anything, or hear any noise of an approaching train ; she stopped, looked and listened long enough to see and hear

the noise of any approaching train and saw and heard none, and believed that the tracks were clear and that she could cross them safely; when she was looking westwardly while crossing the north track she could see but a short distance, because of a curve in the railroad track westward of her; she then stepped off the north track towards the south track, and just as she put her foot on the north rail of the south track, as she supposes, she was struck by the engine of a train coming from the west, and was very severely injured; the engine came on her so suddenly, that she did not see or hear it until it struck her; the west bound train was a long burden train, and made a great deal of noise; when she stepped on the south track, she had her head turned west, up the road and was looking. Other testimony in the cause described the curve in the road. There is a high bluff on the east side of the public road and north side of the railroad where they intersect each other, and the railroad tracks curve around this hill to the north. Several of the witnesses testified that the railroad crossing at the county road was very dangerous. One of the witnesses testified that he had been an agent of the railroad company at this station for eight years, and that he had spoken to different officers of the railroad company about the dangerous character of the crossing, mentioning persons, whom he described as the supervisor, the general superintendent, and the chief engineer. It was also in evidence that Watersville was a place of considerable resort by people coming from the north and south of the railroad, and that the country around Watersville was tolerably thickly settled. Other witnesses besides Mrs. Owings testified that they did not hear any whistle from the train which did the injury; they were not however in a situation to require them to pay attention to it. There was evidence that the bluff above mentioned obstructed the sound, as well as the view of a train approaching from the west.

There was testimony on the part of the defendant to show that the engineer of the train in question blew a long blast from the whistle of his engine when fifteen hundred feet west of the Watersville crossing. He himself testifies that he did not take any precaution to avoid running over any one at the crossing except blowing the whistle, and that if persons were about crossing the track there, and did not hear the whistle, he could not help running over them ; that the maximum speed at which " our trains," as he expresses it, were allowed to run was eighteen miles an hour, meaning probably freight trains ; and that he was going at about that rate, when at the crossing. There was evidence that west of a point designated as No. 1, there was a descending grade of about eighty-five feet to a mile, and that from No. 1 to a point below Watersville Station, the grade continues, but is less. No. 1 is stated to be west of the whistling post, and this is stated to be fifteen hundred feet west of the public crossing.

The evidence offered at the trial is set out in the record at much length, and with great particularity of detail. We do not purpose to transcribe it into this opinion. What we have stated is sufficient to illustrate the questions of law, which are brought before us for review. It is our duty to determine how far the evidence was competent to sustain the issues submitted to the jury, and not to review their findings. It was for them exclusively to judge of the credibility of the testimony, and to draw from it such inferences as in their judgment were legitimate and proper. It is necessary for us to take a view of the mutual rights and duties of these parties at the time and place of the accident. The railroad company was using its own right of way, and it could not under any circumstances be required to yield its precedence in the exercise of this right. But the public have an equal right to use the ordinary highways of the country, and this .

right is not impaired when they cross railroad tracks. At the point of crossing, the traveller on the highway is required to use ordinary care and diligence to ascertain whether a train is approaching ; and on the other hand the persons in charge of the train must give due warning of its coming so that the traveller may stop and give it unobstructed passage.   We do not know that we can do better than to adopt the opinion of the Supreme Court of the United States in a case where a collision occurred between a wagon and a train of cars, at a point where a public highway crossed a railroad track.   "If a railroad crosses a common road on the same level, those travelling on either have a legal right to pass over the point of cross- ing, and to require due care on the part of those travel- ling on the other, to avoid a collision.   Of course, these mutual rights have respect to other relative rights sub- sisting between the parties.   From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching wagon to make the crossing first ; it is the duty of the wagon to wait for the train.   The train has the preference and right of way.   But it is bound to give due warning of its approach so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way.   Such warning must be reasonable and timely. But what is reasonable and timely warning may depend on many circumstances.   It cannot be such, if the speed of the train be so great as to render it unavailing.   The explosion of a cannon may be said to be a warning of the coming shot ; but the velocity of the latter generally out- strips the warning.   The speed of a train at a crossing should not be so great as to render unavailing the warn- ing of its whistle and bell ; and this caution is especially applicable when their sound is obstructed by winds, and other noises, and when intervening objects prevent those

who are approaching the railroad, from seeing a coming
train.  In such cases, if an unslackened speed is desirable,
watchmen should be stationed at the crossing. * * * * *.
We think the Judge (below) was perfectly right there-
fore, in holding that the obligations, rights and duties of
railroads and travellers upon intersecting highways are
mutual and reciprocal, and that no greater degree of care
is required of the one than of the other.  For, conceding
that the railway train has the right of precedence of cross-
ing, the parties are still on equal terms as to the exercise
of care and diligence in regard to their relative duties.
The right of precedence referred to does not impose upon
the wagon the whole duty of avoiding a collision.  It is
accompanied with and conditioned upon, the duty of the
train to give due and timely warning of approach.  The
duty of the wagon to yield precedence is based upon this
condition.  Both parties are charged with the mutual duty
of keeping a careful lookout for danger ; and the degree of
diligence to be exercised on either side is such as a pru-
dent man would exercise under the circumstances of the
case in endeavoring fairly to perform his duty." *Conti-
nental Improvement Company vs. Stead*, 95 *United States*,
161.  It was also said in the case just cited, that if the
train was a special one, it was still more incumbent on it
to slacken speed, and sound the whistle and ring the bell,
than if the train were running on regular time.  There
are cases where the Court can decide the question of neg-
ligence as a matter of law ; many of them have been de-
clared by this and other Courts.  Where there has been
an omission of some act of duty ; or where there is some
act of imprudence which no reasonably careful man would
commit ; if any accident is caused thereby, the Court, as
matter of law, declares the party in default as negligent,
and denies him a recovery.  But in ordinary cases the
question of negligence must be decided by the jury.  The
Courts cannot lay down a rigid rule determining how per-

sons must act in emergencies, which fairly admit of the exercise of individual judgment, and where men of prudence and good sense might reasonably adopt different courses of action. The affairs of human life are too various and complicated to be regulated by a formula deduced from abstract reasoning. Human reason must be applied to difficulties and embarrassments as they arise, with the aid of such experience as may be gathered from the ordinary course of events. The judgment of a jury representing the average intelligence of the community must in a case open for discussion determine whether the party in the given instance, has in his action come up to the ordinary standard of judgment and diligence. It was said in *Cumberland Valley Railroad Co. vs. Maugans*, 61 *Md.*, 53: "When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or other of these conclusions has been drawn by the jury. The inferences to be drawn from the evidence must either be certain and incontrovertible, or they cannot be decided upon by the Court. Negligence cannot be conclusively established by a state of facts upon which fair-minded men may well differ." And it would not be fair to judge of the party's conduct by the light of knowledge obtained for the first time after the event had happened. It is very easy in looking back on an accident to see how it occurred, and to point out how it might have been avoided. But the law requires only ordinary judgment and diligence in dealing with the occurrences as they appeared at the time of the danger. In the present case, on the question of negligence it was proper for the jury to take into consideration the evidence relating to the dangerous condition of the crossing; the obstructions to seeing and hearing an approaching train caused by the bluffs and the curve in the road; the increased difficulty of hearing, caused by the noise of the train passing westward;

the speed of the train and the shortness of the interval between the blowing of the whistle, and the arrival of the train at the crossing; and the further fact that, the train being a burden train, it does not appear from the evidence that there was any reason to look for its approach at the time of the accident. Supposing that the train was running at the rate of eighteen miles an hour, less than a minute intervened between the time when the engineer commenced to sound his whistle, and the time when Mrs. Owings was struck by the train. If the jury inferred from the evidence which has been mentioned that the persons in charge of the train did not use ordinary care and caution to avoid this accident, they were justified in so finding by their verdict. It rested with them to draw this inference, or a contrary one. And they had the right to infer from the evidence that Mrs. Owings used due care in the means which she took to ascertain whether there was danger in crossing the track.

We have been considering this case as if the injured party had attempted to cross the track at the public road. In point of fact, she made the attempt, according to the evidence, at a distance from thirty to forty-eight feet east of it. She was to this very small extent farther away from the cars, than she would have been at the public road. The danger from them would not have been less at the public road, neither would her precautions have been more availing. If the means adopted by the persons managing the train had been such as to enable a traveller to cross in safety at the public road, they would have been sufficient for the same purpose at the place of the accident. We do not think that there is any difference between the two cases.

It will be seen that we think that evidence was properly admitted to show the dangerous character of the crossing; and also that there was no error in the mode in which the

question of negligence was left to the jury by the instructions.

*Judgment affirmed.*

(Decided 23rd June, 1886.)

