### KANSAS, OKLA. & GULF RY. CO. v. JONES.

No. 22379. Opinion Filed Dec. 20, 1932.

Rehearing Denied Jan. 7, 1933.

O. E. Swan and Clayton M. Davis, for plaintiff in error.

E. L. Kirby and Jones & Randolph, for defendant in error.

SWINDALL, J. The plaintiff sued the defendant for damages for personal injuries alleged to have been sustained when a train of the defendant's hit the automobile of the plaintiff which was stalled upon the defendant's track, grounding her action upon alleged negligence. From a verdict and judgment for the plaintiff, the defendant has appealed, alleging numerous errors.

The evidence shows that the plaintiff, before driving upon the railroad track, stopped, looked, and listened; that there was no train in sight, although the view was clear for more than 1,400 feet; and that, hearing no whistle or bell or other sound of an approaching train, she started her car in an attempt to drive across the track, but in shifting the gears the motor stopped and caused the car to stall upon the track. She testified that her hearing was good, and that if a warning had been sounded she thought she would have heard it. Several other witnesses testified, but none of them testified to any warning having been given until just as the train was coming off of a bridge near the crossing where the car was struck. When the car stopped the plaintiff did not look down the track, but she made two unsuccessful attempts to start the car, bending over and pulling out the choke, shifting the gears, and stepping on the starter. At that time her attention was attracted by shouts from her son and another man who were standing between her and the bridge at the door of the factory which was located along the track, from the grounds of which she had just driven. They had observed the train running upon the bridge and shouted to direct her attention to it. When she looked down the track after that the train was nearly over the bridge, the train and the bridge seeming, as she expressed it, to be coming right at her. She waved to the operatives on the engine, made one more unsuccessful effort to start the car, then attempted to get out by the door nearer the approaching train, but that door stuck, and she slid over and was attempting to get out at the opposite door when the automobile was hit by the train and carried about 50 feet and then thrown aside, leaving her hanging out of the car with her foot caught inside. The train evidently reached the point 80 rods from the crossing, where warning should have been given by whistle or bell as provided by section 5531, C. O. S. 1921, at or near the time the plaintiff's car became stalled upon the track, but the evidence was not definite enough to indicate whether the car was already stopped or was still in motion. The plaintiff heard no warning until the one given as the engine was coming off of the bridge, at which

time three or four sharp blasts of the whistle were blown, that being the first consciousness she had that a train was approaching. The near end of the bridge was 582 feet from the crossing where the car was stalled. and the other end was 898 feet from the crossing. When the train stopped the front end of the engine was about 530 feet beyond the crossing. The plaintiff testified that she had had no trouble with the car or with the doors prior to that time. There was no evidence as to the speed of the train, and no evidence as to the condition of the brakes. Nor was there any evidence as to the distance within which it could be stopped other than the fact that from the whistling point to where it did stop was over 1,100 feet. The plaintiff testified that before she drove upon the track she also observed a wigwag signal which was equipped with an electric bell, and that the signal was not moving nor did the bell ring. That signal and bell were installed at another crossing; it was 8 feet from the edge of the crossing at highway No. 73, that highway being 382 feet from the crossing where the plaintiff's car was stalled, so that the signal and bell were 375 feet from the crossing where her car stalled.

(1) One assignment of error is the refusal of the court to instruct the jury not to consider the evidence as to the failure of the signal and bell at highway crossing No. 73 to operate, upon the issue of the defendant's negligence. This question depends upon whether or not the defendant owed the plaintiff a duty to warn her in that particular manner when she was approaching the tracks at, and with the intention of crossing at, another crossing. Upon this point the plaintiff, to support her contention that the defendant was under a duty to warn her by the wigwag signal and electric bell, contended first that it was installed between the highway crossing and the street crossing where she intended to cross. It was not between the crossings in the sense that it was installed to serve both. As a matter of fact, speaking of it as between the crossing would be misleading in a sense. It was within 7 feet of the crossing at highway No. 73, probably as near as safety would permit, and since the distance between the crossings was 382 feet, the device was 375 feet from the street crossing where the plaintiff's car stalled.

The plaintiff, however, contends that even if such a warning would not otherwise be required at the street crossing. and even though the device may not have been installed to protect the street crossing, but only to protect at the highway crossing. yet

if it could be seen and heard by those intending to cross at the street crossing and they had been educated to rely upon it, then there was a duty to them to operate it. Nothing appears that could be regarded as education of that character, all that appears being that the device was installed at the highway crossing for use there and that it was used there. In support of this contention the plaintiff cited several cases, in all but one of which the plaintiff was crossing at a street crossing where the signaling agency was stationed. In the other case, Florida, etc., Ry. Co. v. Foxworth, 41 Fla. 1, 25 So. 338, 79 Am. St. Rep. 149, the plaintiff was crossing from 10 to 50 feet away from the street crossing and the breach of duty was a failure to give a warning from the rear end of a backing train. That case is not in point, nor does it intimate that reliance upon performance of duty to another creates a duty to the one relying upon it. That was a case where the plaintiff was crossing the main street of a village along which the track ran, not using a street crossing, but crossing from 10 to 50 feet from it. No crossing statute was involved, and the harm occurred by backing out cars with no lookout on the rear, which was the approaching end. The duty was based upon common-law principles and the whole street along which the track ran was regarded as an area of danger. In approving an instruction holding the defendant to the exercise of reasonable care after plaintiff should have been seen, and repudiating the contention that the duty arose only after he was seen, based on a contention that he was a trespasser because he was not at the street crossing, the court held that he could cross the street where he chose and was not a trespasser, and said that there being no difference in the care necessary to avoid harm, the case would be governed by the principles applicable to crossing accidents. This meant no more than that there was a duty to exercise care after he should have been seen, just as there would have been at the crossing. The language was somewhat unfortunate, but the court had already held that the defendant was under a duty to exercise care and that the plaintiff was not a trespasser, and it refused to differentiate the measure of duty from the standpoint of legal right to be where the plaintiff was, because there was no difference. The court did say that in switching and backing out in villages and along streets defendants owed a duty to those near the crossings and upon the streets as well as those at the crossings, but the case in no manner supports the point urged by the plaintiff here.

The expressions in that case were confessedly based upon the case of Baltimore & O. Ry. Co. v. Owings, 65 Md. 502, 5 Atl. 329, 28 Am. & Eng. R. R. Cas. 639, a case where the plaintiff was crossing upon a path used by travelers without objection by the railroad company, the path being 38 or 40 feet beyond the street crossing. No crossing statute was involved, but the whole area was considered dangerous because of a curve and a ledge, and the court evidently held the whole area to be entitled to not only the same sort of warning, but to a warning given at the same time and place. They held that the jury was permitted to find that the defendant was negligent and that the plaintiff was not guilty of contributory negligence. They discussed it as a crossing accident, but in explanation the court said that such care as would have avoided harm at the crossing would have avoided it 38 or 40 feet beyond the crossing, and that care by the traveler at the crossing would have been care 38 or 40 feet further from the approaching train. Here as in the Florida case the duty to warn was based upon probability of harm at the place of the accident, and it was assumed that both places were entitled to the same warning because apparently no different measures of care were needed because of differences in danger at the different places within the area of danger. Neither case was in point, for in both due care was based upon probability of harm at the particular place, and there appeared no difference as to degree of probability of harm. Further than that, there was involved only the matter of signals from approaching trains, which are signals of an entirely different character and given for a radically different purpose than signals by devices stationed at particular points of danger along the tracks. Signals by approaching trains by whistle or bell are only the minimum measure of care, and they are not given at the place of danger to warn people from that, but they are, so to speak, sent ahead by the train along the track to warn people at whatever places there may be danger in approach sufficient to create a duty to warn and they arise from such probability of harm as justifies requiring them upon common-law principles at certain points or areas of danger, or they may be. as they often are, based upon statutes which have regard to points of danger such as crossings. From the nature of the signal, one sent along the the track, there may well be people at different points contending that failure to warn when the train was at a certain point was a breach of respective duties to each of them, and, in the light of common understanding of purpose and intent, they would at least have this basis for their claim, that there was a signal sent along the track and across their line of travel, whereas, as will be seen, devices installed at particular places along the track do not even furnish this basis for argument.

The warnings given by devices stationed at particular points are warnings not to cross the track at the place of danger, and are required or assumed because of greater actual or supposed danger at that point. They are not intended to include more distance along the track than the point or area of such extrahazardous place, and when placed at street or highway crossings they include only the width of the crossing, and they are sent, so to speak, not along the track, but back from the track along the street or highway at which they are stationed to warn people approaching along that avenue toward that particular dangerous point upon the track. This difference in character, in direction as we have called it, and in purpose, is something well known to and appreciated by men of common experience and intelligence. They know that such signals are not commonly installed at crossings, and they realize that when one is installed it is because of some peculiar danger in attempting to cross at that point, and that it is only to warn people to approach at that point with caution or in observance of the signal. This being so, there is no basis for imposing a duty to use the device to warn at other points and a person crossing at another point is merely relying upon the giving of some warning not required or intended, and which he should know was not required or intended, for him. If the conditions at the place where he intends to cross are such as to demand a signal of like character, then he might allege negligence in failing to install it, but he should be in no manner misled as to intent or purpose by the installation and operation of one at a different point. No authorities in point were cited by either party, but the only authorities which we have found bear us out in our conclusion.

In Spillane v. Mo. Pac. Ry. Co., 135 Mo. 414, 58 Am. St. Rep. 580, an ordinance required watchmen at certain crossings. The accident occurred while the plaintiff was crossing a street along which the track ran, 266 feet away from one of those crossings. The court said:

"The circuit court did not err in excluding section 816 of the ordinances. It was irrelevant to the case. That ordinance had in view the protection of persons 'about to

cross the railroad track at the designated crossings.' As all the evidence showed that the plaintiff was not hurt at the crossing and was not about to cross the tracks at a point where a watchman had been deemed necessary by the city council, but was hurt two hundred and sixty-six feet east of said Grand avenue crossing, the failure to have a watchman * * * did not contribute in any degree to plaintiff's injury, and had no causal connection therewith. Plaintiff entirely failed to bring himself within the protection afforded by the ordinance."

Nothing but the existence of duty was involved, and there was no necessity of talking about a causal connection. It is true that the ordinance was limited in terms, being to protect "persons about to cross the railroad tracks at the designated crossings," but the language of the ordinance merely followed the usual and common understanding as to necessity and purpose, so that language does not weaken the authority.

In Strickland v. New York Cent. & H. R. R. Co., 84 N. Y. Supp. 655, in approving an instruction of the trial court, it was said:

"The duty of the flagman was to look after the Genesee street crossing, and to warn persons crossing the railroad tracks along that street. He had no duty to perform as to Church street, along which the tracks laid, except so far as such street and tracks were within the limits of Genesee street. Under the charge, therefore, the plaintiff's right to recover was dependent upon the accident having occurred while the girl was attempting to cross the tracks along that street. While she had the legal right to cross Church street and the tracks at any point she saw fit, still the defendant owed her no duty, so far as the flagman was concerned, if she attempted to cross outside the limits of Genesee street. The verdict of the jury can therefore be upheld only upon a finding that the accident occurred while the girl was crossing the tracks along Genesee street. Such a finding was contrary to the evidence in the case, if not wholly without evidence to support it.

"* * * Under these circumstances, it cannot be said that the neglect of any duty by the defendant as to a flagman was the cause of the plaintiff's injuries, unless it be claimed that the duty of the flagman was to warn foot passengers extended to persons crossing Church street outside of the limits of Genesee street, and we cannot assent to such a proposition."

Here again the court talked about causation, which was wholly unnecessary. The question was one of duty, and it was clearly held that there was no duty, and the court conceded that if there had been a duty causation would have been different. a common instance of confusion in thinking of causation in discussing and concluding as to duty.

An examination of the evidence in the case at bar indicates that while the jury might have found that some other negligence was the proximate cause of the harm, there was no such condition as would have permitted the court to have instructed the jury to have done so, and for all that can be ascertained the jury well may have concluded, and it is not at all improbable that they did conclude, that the proximate cause of the harm was the failure of the device installed at the crossing at highway No. 73 to operate and thereby warn the plaintiff not to drive upon the track. We do not say as did these other courts that they could not do so. The trouble is that they might have done so and may have done so because this was the nearest signal to the street where plaintiff was crossing and was several hundred feet nearer to the approaching train, and, if operating, probably would have been operating in time to have kept her from the track. That might well have been the conclusion of the jury, and since such failure was not a breach of a duty to the plaintiff, and for this reason the jury should have been instructed to disregard it upon the issue of the defendant's negligence, the failure to do so was error.

(2) (3) (4) The defendant also contends that it was error to overrule its demurrer to the evidence, and error to refuse to direct a verdict in its favor, and it contends also that the petition does not state facts sufficient to constitute a cause of action. In support of the contention that the petition does not state facts sufficient to constitute a cause of action, it attacks the statement based upon failure to give the statutory crossing warning by sounding the whistle or ringing the engine bell at least 80 rods before reaching the crossing, as required by section 5531, O. O. S. 1921. [O. S. 1931, sec. 11961] and it contends that there was no attempt to state a cause of action for other negligence except under the doctrine of the last clear chance. This latter contention is unsound. for in addition to charging failure to give the statutory street crossing warning, the plaintiff alleged that the engineer and fireman were negligent in failing to keep a lookout, in failing to give her any warning whatever of the approach of the train to avoid the collision, and in failing to slacken the speed of the train after they observed her and observed that she was in a place of peril.

There is nothing in the petition indicating that the plaintiff was not entitled to a lookout and such further reasonable care as whatever would be observed by a careful lookout would reasonably require. She did not in express terms allege negligence in failing to slacken the speed of the train **after she should have been seen** as well as after she was seen, but this allegation of failure to exercise care in the keeping of a lookout serves the same purpose, for if the train speed could not by reasonable care have been slackened to avoid harm after she was seen, but could have been slackened and have avoided harm had a proper lookout been kept, then the failure to keep a proper lookout would be the proximate cause of the harm and would be actionable unless she should be guilty of contributory negligence. The defendant does not deny that the operatives of the train were under a duty of keeping a lookout and in giving such warnings as were required in the exercise of reasonable care in approaching the crossing, or the taking of other steps, such as slowing down, but it seems to be of the opinion that the plaintiff herself was negligent, and that therefore, she was not entitled to the performance of those duties, and it further contends that since failure to give the statutory crossing warning did not induce her to drive upon the track, because she had already done that, and since that failure did not cause her car to stall, and since she had a clear view down the track from the place where the car was stalled, the failure to give the statutory warning could not have been the proximate cause of the harm. The defendant further contends that the plaintiff was negligent in not knowing of defects in her car, and that, therefore, she was negligent in driving it upon the track. As to alleged negligence of which there was evidence, a consideration of the sufficiency of the evidence in connection with the alleged error in overruling the demurrer to the evidence and in refusing to direct a verdict will dispose of the attack upon the petition as to such negligence, since any defect or omission in a petition may be cured by the evidence, and when a trial is had what is material is the sufficiency of the evidence, no objection being made against a variance between the petition and the evidence. Section 312, O. O. S. 1921 [O. S. 1931, sec. 245]; Lone Star Gas Co. v. Parsons, 159 Okla. 52, 14 P. (2d) 369; Forbes v. Becker, 150 Okla. 281, 1 P. (2d) 721, 80 A. L. R. 1.

It is clear that there was no evidence that would justify holding that as a matter of law the plaintiff was negligent in not knowing that her car was defective, if it could be said that it was defective, for the evidence was that it had never before given her trouble and that she knew of no defect. Even though it were defective and the plaintiff knew it, it would still be a question for the jury to determine as to whether in driving it upon the track she acted otherwise than would a person of reasonable diligence and care under the same circumstances, for we can say from common experience that it is not usual to have a car towed to a repair shop when it can get there under its own power, even though necessary to cross a railroad track, if it is only necessary to make adjustments in the ignition system or adjust the doors. Further than that, even though we went so far as to admit that there was negligence in driving upon the track and that for that reason the stalling of the car was due to that negligence so far as negligence in the taking of precautions to ascertain whether or not a train was approaching comes in question, the evidence clearly showed that before driving upon the track the plaintiff stopped her car, looked down the track, and listened, that no train was in sight, and that she heard no train and heard no warning signal, and that if a warning had been given she thought she would have heard it, for her hearing was good. Under such circumstances we could not say that as a matter of law the plaintiff was guilty of negligence in not immediately and constantly looking down the track for an approaching train. She was there under circumstances clearly entitling her, at least in the absence of contributory negligence, to a warning from the approaching train before it came nearer than 80 rods from the crossing where her car was stalled. We have considered this matter of alleged negligence on her part from prior to the time that she stopped her car and looked and listened for sight or sound of an approaching train, for we have considered the argument that she was negligent in not knowing of some alleged defective condition of her car and in driving the car upon the track in that condition. Having considered that, we do not wish to be understood as conceding that had she been negligent in getting her car stalled upon the track she would have reduced the duty on the defendant merely to a duty to exercise reasonable care to avoid harm after she was actually seen. As soon as the car became stalled she attempted to start it, and we do not concede that this prior negligence, if it was negligence, in permitting the car to become stalled, would deprive her of any duty which would be owed to her had she become stalled in the exercise of reasonable care, notwithstand-

ing the fact that had she been negligent in making no effort to get from the track, or had been negligent in driving upon the track under circumstances such that her neglect of duty continued as a contributing cause up to the time she was actually discovered to be in peril, this would be true. We do not decide this, but also we wish to disclaim admitting that even under such circumstances the plaintiff would be required to recover, if at all, under the doctrine of the last clear chance. As we view the facts, there is nothing in the petition, nor was there anything in the evidence, that would permit us to conclude that twelve reasonable men must agree that at any time the plaintiff was guilty of negligence, which disposes of the contention as to contributory negligence, which in any event was a question properly submitted to the jury, and would dispose of the contention that any negligence of hers was the sole proximate cause of the harm.

But we must agree that there were points upon which reasonable men might differ, for instance, as to whether the plaintiff would have heard the statutory warning or any subsequent warning from the train prior to the one actually given when the engine was merely off of the bridge, had any such warnings been given. It was clear that she was considerably absorbed in her attempts to start the car, and that even though the **train made a loud noise** in running over the bridge, she was not aware of its approach until her attention was called to it and she looked up, and at that time the engine was close to the near end of the bridge which was only 582 feet from the crossing, 738 feet nearer to her than the 80-rod point.

We have not overlooked the cases cited by the defendant upon proximate cause or the question of negligence, but none of them are in point, for in some of them the train was actually seen before the duty to warn was breached; in others the car got upon the track because it was not under control, the plaintiff having failed to stop or listen, and the train being so near that reasonable care could not then avoid the harm; in others the car became stalled before any duty was breached, and it was not possible by the exercise of reasonable care to avoid the damage. None of these cases apply to the facts in this case, and there is a remarkable difference between a failure to warn as the proximate cause of harm to inanimate objects and as the proximate cause of harm to persons who are in a position of danger, human beings having the power

to will and act and the power of removing themselves to a place of safety.

The defendant contends that there was no evidence of failure to keep a lookout, but if no warning was given until the train was almost within 582 feet of the crossing as the jury could conclude, that was evidence of failure to keep a lookout, for a jury could infer that had a lookout been kept an earlier warning would have been given.

There was some variance between the allegations of the petition and the evidence, for the evidence showed that the plaintiff had abandoned her attempts to start her car and had been and was endeavoring to escape when her car was struck, and in the petition the plaintiff had alleged that the car was struck while she was attempting to start it. This variance was merely as to facts in the line of causation, and no surprise having been shown and no continuance requested upon that ground, the variance is not only immaterial, but cannot now be made the subject of complaint. Section 312, C. O. S. 1921 [O. S. 1931, sec. 245]; Lone Star Gas Co. v. Parson, 159 Okla. 52, 14 P. (2d) 369; Forbes v. Becker, 150 Okla. 281, 1 P. (2d) 721, 80 A. L. R. 1.

There was no evidence as to the speed of the train, or as to distance within which speed could be substantially slackened or the train stopped, and the case upon the evidence reduced itself to one of failure to warn by statutory warning or otherwise, and failure to keep a lookout so far as that resulted in failure to warn.

(3) (4) Upon these issues the contentions of the defendant are settled by the rule that upon an issue of negligence where the evidence is such that the jury may reasonably differ as to the evidentiary facts or as to the drawing of inferences necessary to the establishment of the issue by a preponderance of the evidence, the determination of the issue is for the jury, and by the same rule upon the issue of proximate cause. Oklahoma Civil Digest, vol. 4, Negligence, sec. 13; Complete Oklahoma Digest, Negligence, sec. 64.

So far as the statement of a cause of action in the petition is concerned, the defendant contended that an attempt to state a cause of action under the doctrine of the last clear chance was defective, because the petition itself admitted that the brakes were so defective that the train could not be stopped in an emergency, and that negligence as to the condition of the brakes would be past negligence. Since the petition is not reduced to an attempt to count

upon that doctrine, and since the jury at this first trial even went so far as to find that the plaintiff was not guilty of contributory negligence, that contention cannot be urged unless the evidence at the next trial makes it appropriate, but since it has already been urged when not applicable, and no authorities in point were produced, we will require in the event that the question is again raised and becomes entitled to consideration, that the briefs contain some showing of a reasonable search for authorities upon the matter of whether such a condition is mere past negligence or whether the running of a train with brakes negligently defective is not negligence and actionable if this defective condition brings about harm which the defendant is under a duty to exercise reasonable care to avoid and could otherwise so have avoided it.

(5) (6) (7) (8) Requested instruction No. 2 was properly refused. It was an instruction that there was no evidence of a failure to keep a lookout. Running several hundred feet after a car not in motion, but actually stalled upon the track, was visible, was evidence of failure to keep a lookout, for it could be inferred that had a lookout been kept warning would have been sooner.

Requested instruction No. 14 was properly refused. It was in the alternative and one alternative was that upon finding the bare fact that the automobile was in a defective condition the jury should find for the defendant. This point has been covered in an earlier part of the opinion.

Requested instruction No. 6 was properly refused. It was an instruction that negligence was never presumed, and then set forth an instruction as to burden of proof. The court properly instructed as to burden of proof, and that was all that either party was entitled to, since a presumption cannot be thrown into the balance to overthrow what would otherwise be a preponderance of evidence upon an issue, a presumption being that which aids a party having the burden of proof in the absence of evidence, and not weight to be thrown in with the evidence, for when evidence is introduced, the presumption flies out of the case (Echols v. Hurt, 116 Okla. 43, 243 P. 493; Kramer v. Nichols, etc., Co., 103 Okla. 208, 229 P. 767; Wigmore on Evidence, 1st Ed. sec. 2491, vol. 4, p. 3534), and the issue turns upon the evidence. The proper instruction as to burden of proof was sufficient.

Refusing requested instruction No. 13 was proper, for it was predicated upon an assumption that as soon as the plaintiff drove upon the track she saw the approaching train, and the evidence clearly was against such an assumption, and it was for the jury to say when subsequently to that time, if at all, the plaintiff was negligent in not knowing of the approaching train sooner than she became aware of it.

Requested instruction No. 12 was properly refused. It would tend to induce the jury to think that they must hold the plaintiff to the same measure of care before she became aware of the approach of the train as though she had already observed it, whereas the jury had the right to consider what measure of reliance the plaintiff might have put upon her right to warning, she having exercised due care in coming upon the track, and to consider the matter of exercise of due care with that in mind.

Requested instructions Nos. 4 and 5 were properly refused, the former being an instruction not to consider the charge that defendant's employees made no effort to stop the train before striking the automobile, and the other an instruction not to consider the charge that the brakes on the train in question were defective. It does not appear from the record that the jury was at any time informed that any such issues were in the case, and in giving the instructions the court only submitted negligence in not keeping a lookout and in failing to warn, and we cannot see that refusing to instruct the jury not to consider anything else in the way of negligence or a ground of recovery, could be error, as there would be no tendency to disregard the plain instructions of the court requiring them to find for the plaintiff only upon proof of the particular negligence covered by the charge of the court. Before any such instruction would be necessary the jury would be required to know of such an issue, and nothing indicates that they knew of either issue.

The defendant complains of instruction No. 10, which permitted recovery for future pain and suffering, contending that there was no evidence to support such a recovery. We suggest that the record be read again, with special reference to the testimony of the plaintiff and that of her physician.

The defendant complains of the giving of instruction No. 4, which was as follows:

"You are instructed that it is the duty of the employees of a railroad company operating its trains along the railroad tracks to keep a lookout for vehicles and pedestrians at places where said railroad crosses public highways at grades, and to exercise ordinary care (as such term has been elsewhere defined in these instructions) either by sounding the whistle or ringing the bell, or by taking other means

to warn persons using the road intersection of the approach of the locomotive and train; and if you believe from the evidence that the defendant's employees failed to exercise such ordinary care in approaching the road crossing where said accident occurred and that such failure was the proximate cause of the accident and of the plaintiff's injuries. then your verdict should be for the plaintiff, unless you further find and believe from a preponderance of the evidence that the plaintiff was guilty of contributory negligence as elsewhere explained in these instructions."

A contention that there was no evidence of failure to keep a lookout has already been considered.

But the defendant also contends that instructing that the operatives were required to exercise ordinary care in approaching a crossing at a public highway in keeping a lookout and in sounding the whistle or ringing the bell, "or by taking other means" to warn persons, permitted the jury to set up a standard of its own as to negligence. Midland Valley R. Co. v. Bailey, 34 Okla. 193, 124 P. 987, cited to the point, is not in point, for there the court seems to have made the jury the absolute judges both as to law and fact, and did not limit the duty to ordinary care as the court did here, and in the present case there was a reference to other parts of the instructions which properly defined ordinary care. The words "or by taking other means" were not properly in the instruction, but it is clear that the instruction was limited to warnings given by those operating the approaching train, the engineer and fireman, and since men of average intelligence would all agree that no better warning can be given by them than by whistle or bell, and would agree that in this case, where the necessity for warning arose when the train was several hundred feet away, no other warning would have been adequate, we cannot conclude that the presence of these words in the instruction could have caused harm, and were this the only error set out, we could not reverse the judgment because of it. Section 319, C. O. S. 1921 [O. S. 1931, sec. 252].

Upon the question of whether the plaintiff was entitled to have the jury consider in her favor upon the issue of contributory negligence evidence of the failure of the signal at the highway crossing to operate, the defendant cited no authorities, and the only authority cited by the plaintiff was Crowley v. C., B. & Q. R. Co. (Iowa) 213 N. W. 403, 53 A. L. R. 964, and note at page 973, in which the reported case and all cases annotated had to do with reliance by those using the crossing at which the signal was installed and the question was whether relying upon it would make the plaintiff guilty of contributory negligence as a matter of law in jurisdictions where the question of contributory negligence may be one of law for the court, and the annotations indicate that many courts hold that if he relied solely upon a signal not operating and failed to exercise due care irrespective of the signal, he was guilty of contributory negligence as a matter of law, and other cases holding that while he would not be relieved of the duty to otherwise exercise care, his reliance upon the signal might go to the jury with the other evidence upon the issue. This case was not, nor were the cases annotated, in point upon the relevancy of the evidence in favor of the plaintiff here who was crossing upon a street a block away. Nor was the contention supported even by argument. For want of authorities or argument, the question not being elementary or fundamental, the point is not decided, and the parties are accorded an opportunity to consult authorities upon the point in preparation for a new trial granted upon other grounds. L. S. Cogswell Lbr. Co. v. Manahan, 135 Okla. 174, 274 P. 871; Allison v. Bryan, 26 Okla. 520, 109 P. 934.

The attorneys who tried the case did not draw the petition, but in the light of the variance shown and because the petition is otherwise unskillfully drawn, we suggest that before another trial the petition be amended in such respects as the plaintiff may desire so to do.

Judgment reversed and a new trial ordered.

CLARK, V. C. J., and RILEY, HEFNER, CULLISON, and ANDREWS, JJ., concur. McNEILL and KORNEGAY, JJ.. dissent. LESTER, C. J., absent.

Note: See under (1) annotation in L. R. A. 1916D, 789; 56 A. L. R. 1115; 22 R. C. L. 1041; R. C. L. Perm. Supp. p. 5281; R. C. L. Pocket Part, title "Railroads," § 274. (3) 20 R. C. L. 26, 27; R. C. L. Perm. Supp. p. 4808; R. C. L. Pocket Part, title "Negligence," § 19. (4) 22 R. C. L. 148; R. C. L. Perm. Supp. p. 5186; R. C. L. Pocket Part, title "Proximate Cause," § 31. (6) annotation in 2 L. R. A. (N. S.) 300; 14 R. C. L. 752; R. C. L. Perm. Supp. p. 3659; R. C. L. Pocket Part, title "Instructions," § 22. (7) 14 R. C. L. 793; R. C. L. Perm. Supp. p. 3650; R. C. L. Pocket Part, title "Instructions," § 55.